49 CCPA

**Application of Harry T. BOOTH and Frank E. Carroll, Jr.**

**Patent Appeal No. 6734.**

United States Court of Customs and Patent Appeals.

Feb. 13, 1962.

Rehearing Denied April 11, 1962.

———◆———

Daniel L. Morris, New York City, for appellants.

Clarence W. Moore (George C. Roeming, Washington, D. C., of counsel) for the Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, MARTIN and SMITH, Judges and Judge WILLIAM H. KIRKPATRICK.*

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of

MARTIN, Judge.

This is an appeal from the Board of Appeals of the United States Patent Office which affirmed the examiner's rejection of claims 51–53, 57 and 58, all of the claims of appellants' application for a patent on "Heat Exchange Apparatus."

Claim 51 is representative and reads:

"51. The method of making maximum use of permitted pressure drop in transferring heat from one fluid to another having a lower temperature through the wall of a substantially cylindrical tube through which one of said fluids is flowing in a stream under pressure and around the outside of which a second fluid is flowing, which comprises the steps of increasing the diameter of said fluid stream to create a plurality of spaced low velocity substantially cylindrical fluid bodies along said tube, decreasing the diameter of said stream over a relatively short length of tube between successive of said fluid bodies coaxially of said fluid bodies to increase the speed of flow of all of said fluid from preceding to succeeding fluid bodies to effectuate a turbulence in all of the fluid in said fluid bodies."

The sole issue is obviousness of the claimed invention in view of the following patent:

Van Amringe 85,149 December 22, 1868

Appellants' invention relates to a method of heat exchange between two fluids. A particular type of turbulent fluid flow is specified. The desired result is efficiency in the transfer of heat between fluids as compared with prior art methods. It is contemplated that heat exchangers in accord with appellants' methods could be smaller and lighter than prior art devices and would be useful in connection with aircraft engines.

Judge O'CONNELL, pursuant to provisions of Section 294(d), Title 28, United States Code.

Although each appealed claim recites a method, presumably not limited to any particular apparatus, a discussion of the apparatus disclosed will be helpful in understanding the claimed method.

The apparatus feature which is said to be essential in producing the desired type of turbulent flow is the tube structure shown in the drawing labeled "Fig. 4."[1]

Bundles of such tubes are encased in a shell so that one fluid can flow through the tubes while the other fluid flows around them. With regard to fluid flow under pressure through a tube 23, the specification states:

"The grooves 43 are short in length compared to the tube distance between adjacent grooves, and constitute longitudinally spaced apart flow restrictors which tend intermittently to speed up the velocity of the fuel as it passes through the tubes. Further, the normal tube diameter beyond each restriction becomes in effect an expansion chamber in which the fuel flow becomes random and turbulent and may even reverse itself before being forced through the next succeeding restriction to repeat the turbulizing action in the next following expansion chamber."

Apparently the regions between constrictions 43 will form the "plurality of spaced low velocity substantially cylindrical fluid bodies" recited in claim 51. A constriction 43 will apparently function by "decreasing the diameter of said stream over a relatively short length of tube between successive of said fluid bodies coaxially of said fluid bodies to increase the speed of flow of all of said fluid from preceding to succeeding fluid bodies," as in claim 51, while the step of "increasing the diameter of said fluid stream" occurs after the stream leaves a constriction 43.

The Van Amringe patent is entitled "Improvement In Tubes For Steam-Generators" and consists of a single page of drawings, reproduced below as "Fig. 1" and "Fig. 2,"

and a single page of specification which reads in relevant part as follows:[2]

"(1) My invention has for its object to improve the construction of

1. Copied from appellants' specification.

2. The paragraph numbers are not in the original specification and have been added to facilitate discussion.

the tubes of steam-boilers so as to economize the heat, or, in other words, to obtain a greater practical effect from the same amount of fuel than when the tubes are constructed in the ordinary manner; and [sic]

(2) It consists in the construction of the tubes in one piece, with spiral or transverse corrugations extending wholly or partially around said tubes, as hereinafter more fully described.

(3) A represents a tube of a steam-generator, which is corrugated spirally, as shown in fig. 1.

(4) The corrugations $a'$ may extend entirely around the tube, as shown in fig. 1, or they may be formed only upon the upper part of said tube, as shown in red in fig. 2. The corrugations $a'$ may be formed at any desired angle with the axis of the tube, or they may be formed at right angles with said axis.

(5) By this construction, as the flame, smoke, ond other products of combustion pass through the tube A, they impinge upon the inwardly-projecting surfaces of the corrugations $a'$, and receive a waving or swirling motion, the effect of which is to cause all the particles of said products of combustion to come into immediate and frequent contact with the inner surface of the tube A, so that a much larger amount of heat is abstracted from said products of combustion, and communicated to the water surrounding the tube, thus producing a much greater practical effect than is possible when the products of combustion pass through a smooth, straight tube, or one corrugated longitudinally, or parallel with the axis of said tube.

(6) It should be observed that when the products of combustion pass through the tube A, they impinge upon the inwardly-projecting surfaces of the corrugations $a'$, but when the products of combustion pass along the outer surfaces of the tubes, they impinge upon the outwardly-projecting surfaces of said corrugations, so that, in every case, the products of combustion are thrown into a waving or swirling movement, and the greatest possible amount of heat is abstracted from them."

The Van Amringe patent was first cited by the board under the provisions of Rule 196(b), and appellants elected to have further prosecution before the Primary Examiner. The claims now before us were submitted for further consideration by the examiner who found them unpatentable in view of Van Amringe. This rejection was affirmed by the board in a second decision which is the basis of the appeal to this court.

Both the examiner and the board found in Van Amringe a disclosure of a heat exchanger tube with indentations extending at right angles to and completely around the tube as provided in appellants' disclosure (see Fig. 4, supra). The examiner pointed out that Van Amringe expressly recites tubes with "transverse corrugations extending wholly * * * around * * *" (paragraph (2), supra) and that the statement in paragraph (4) of Van Amringe, supra, that "corrugations $a'$ * * * may be formed at right angles" with the tube axis, applied both to Fig. 1 and Fig. 2 of the Van Amringe drawing. The board reached the same result by finding in Van Amringe "a disclosure of four different species [of corrugated tubes], of which one is a species as in the instant case having spaced corrugations at right angles to the axis of the tube extending completely around the latter."[3]

---

**3.** The other 3 species found by the board were: corrugations at a right angle to the tube axis and extending partially around the tube, and corrugations at some angle other than a right angle and extending either partially or completely around the tube.

The board summarized these findings by stating:

"* * * we think that Van Amringe discloses structure coordinate with that of appellants."

The board noted that the tube structure of Van Amringe was used by him for a fluid flow heat exchange purpose, i. e., the fluid products of combustion heating another fluid, water, and that this purpose is analogous to the purpose of appellants' tube structure. The board stated:

"From the standpoint of the method following from such a structure, we fail to see that the particular terminology of the claims at hand presents any distinction over the operational method that would inherently occur in Van Amringe, and in this sense we attach no significance to appellants' contentions of different concept. * * *"

The board expressed the opinion that the pressure limitation of the claims, as exemplified by claim 51, was satisfied by Van Amringe because fluid flow would not occur in his tube unless said fluid was under pressure. The other limitations of the claims were also found by the board not to be of patentable significance.

As we understand the situation, although the claims recite a method, the particular construction of appellants' tube which allegedly causes novel and effective results is the feature which appellants contend imparts patentability to their invention. Their position is stated concisely in their brief wherein it reads:

"The inventive concept is directed to an improvement in the film coefficient of heat transfer at the tube wall whereby the boundary layer of fluid, normally lying inside and adjacent to the tube wall and insulating it, is disrupted in such manner as to provide for a more thorough and facile transfer of heat through the tube wall.

"In accordance with such concept, appellants herein devised a generally new method of and means for heat transmission involving the obtaining of unique flow velocity and flow restriction effects in a fluid flowing through a heat exchange tube."

It is our opinion that Van Amringe discloses use of appellants' tube for a heat exchange function and that appellants' claimed method is anticipated by a process inherent in Van Amringe.

Certainly in stating "the corrugations $a'$ may extend entirely around the tube," [4] Van Amringe is very explicit in disclosing that particular characteristic of appellants' invention. Likewise, in stating that the "corrugations $a'$ may be formed at any desired angle with the axis of the tube, or they may be formed at right angles with said axis," [5] the patentee completes a structural concept which is the basis of appellants' tube configuration.

Appellant endeavors to avoid this conclusion by contending that the patentee "has illustrated two different forms which his invention might take," i. e., the corrugations can extend entirely around the tube at other than right angles, or the corrugations may be formed only upon the upper part of said tube and these may be formed at right angles with said axis. We are of the opinion that this interpretation of the Van Amringe specification is unwarranted and portrays an unreasonable analysis of the patentee's disclosure. The two types of corrugations are described in one sentence, and the suggestion of possible changes in the degree of angularity of these two types of corrugations is set forth in the next sentence. The "right angle" teaching is just as applicable to the circumferential corrugations as to the partial ones.

Appellants contend that Van Amringe did not contemplate right angle circumferential corrugations because such corrugations would produce turbulence and

4. Emphasis ours.

5. Emphasis ours.

Van Amringe described his flowing fluid only as having a waving or swirling motion. We do not agree. We do not believe that the description of the motion can change the obvious teaching of the patentee's specification, especially since the patentee states that his tube is so constructed "to cause all the particles of said products of combustion to come into immediate and frequent contact with the inner surface of the tube A, so that a much larger amount of heat is abstracted from said products of combustion, and communicated to the water surrounding the tube, thus producing a much greater practical effect than is possible when the products of combustion pass through a smooth, straight tube, or one corrugated longitudinally, or parallel with the axis of said tube."

There can be no doubt that the patentee was endeavoring to accomplish the same result as appellants and if, according to appellants, the optimum result can be achieved by the use of a series of right angled circumferential corrugations, then all appellants have done is make this discovery by testing the teachings of another.

Appellants further contend that, even though these particular corrugations may be old, "in making use of such a configuration to achieve novel and remarkably effective velocity and turbulence effects applicants have put the prior art to a new use," and that patentability resides in this fact. The trouble with this argument is that we do not find that appellants have claimed a new use. In fact, it is the same objective and use that Van Amringe discloses very explicitly in his specification and which we have already cited.

One other point raised by appellants should be discussed. Appellants contend that their tube has many other advantages such as:

"* * * the flowing column of fluid is rent by powerful disrupting forces, is turned back upon itself and rips apart the laminar film layers normally protecting and insulating the tube wall. In addition to serving as a restrictor for the fluid flowing from the first orifice restriction, the second restriction acts also to produce a second or repeated jet velocity flow in the center of the tube, discharging it toward the next or third restriction. The violent reaction occurring within the chamber between the first two restrictions is repeated between the second and third and likewise takes place along the length of the tube at and between successive restriction locations. * * *"

We do not doubt that these results and others are obtained by appellants. However, we do not believe that the listing of all these advantages as the result of the use of appellants' tube aids them in their cause since, if these advantages do exist, they are also inherent in the teachings of Van Amringe.

Although we have been discussing specifically claim 51, we agree with the board that the limitations set forth in the other appealed claims are not of patentable significance. We therefore affirm the board's decision with reference to claims 51, 52, 53, 57 and 58.

Affirmed.