**In re PEREGRINE SYSTEMS, INC., et al., Debtors.**

**The Copley Press, Inc., Appellant,**

v.

**Peregrine Systems, Inc., et al., Appellees.**

**No. CIV.A.03–815–KAJ.
Bankruptcy No. 02–12740(JFK).**

United States District Court, D. Delaware.

July 12, 2004.

David L. Finger, Wilmington, DE, Counsel for Appellant.

Kimberly E.C. Lawson, Reed Smith LLP, Wilmington, DE, Of Counsel: Laura Brill, Esquire, Irell & Manella LLP, New York, New York, Counsel for Appellees.

## MEMORANDUM OPINION

JORDAN, District Judge.

### I. Introduction

Presently before me is an appeal by Copley Press, Inc. ("Copley") from the January 28, 2003 bench ruling of the United States Bankruptcy court for the District of Delaware striking from the record a document known in this case as the "Latham Report"[1], and the June 16, 2003 Order of the bankruptcy court denying Copley's motion for reconsideration of the decision to strike the Latham Report. (Docket Item ["D.I."] 1.). Peregrine Systems, Inc. and Peregrine Remedy, Inc. (collectively "Peregrine") have filed their opposition. (D.I. 13.) Also before me is a

1. The "Latham Report" will be described more fully in Section II.

motion by Copley to compel Peregrine to place the Latham Report into the Appellate record (the "Motion to Compel"; D.I. 7), and a motion by Peregrine "for judicial notice of documents, or in the alternative, request to designate documents as part of the appellate record" (the "Motion for Judicial Notice"; D.I. 19.) I have jurisdiction over this case pursuant to 28 U.S.C. § 158(a). For the reasons set forth below, the appeal will be reversed and remanded, the Motion to Compel will be denied, and the Motion for Judicial Notice will be granted.

## II. Background

Peregrine is a provider of "Infrastructure Management" software.[2] (D.I. 13 at 2.) In April 2002, after learning of possible accounting and financial irregularities, the Audit Committee of Peregrine's Board of Directors (the "Audit Committee") commenced an internal investigation. (*Id.*) In that same month, Peregrine terminated Arthur Andersen LLP as Peregrine's auditors, Peregrine's then-Chief Executive Officer and Chief Financial Officer resigned, and the Audit Committee retained Latham & Watkins LLP to investigate the accounting problems. (*Id.* at 2–3.)

According to Peregrine, Latham & Watkins' investigation began in late April 2002 and lasted for approximately four months. Peregrine states that Latham & Watkins reviewed a massive amount of documents and interviewed close to 90 people, including Peregrine's current and former officers, directors and employees, as well as third-party witnesses. (*Id.* at 3.) Pereg-

rine asserts that the final version of the report was nearly 250 pages and contains Latham & Watkins', as well as other outside attorneys', legal analysis and advice to Peregrine.[3] (*Id.*)

Ultimately, Peregrine announced that it would restate its earnings for fiscal years 2000, 2001, and 2002. (D.I. 8 at 3.) According to Copley, those restated earnings reduced revenues by hundreds of millions of dollars. (*Id.*) Subsequent to Peregrine's earnings restatement, the Securities and Exchange Commission (the "SEC") began an investigation, and Peregrine stockholders filed federal securities class action lawsuits accusing Peregrine of fraudulently overstating earnings. (*Id.* at 4.) On or about August 13, 2002, Peregrine provided the Latham Report to the SEC. (D.I. 13 at 4.)

On September 22, 2002, Peregrine voluntarily filed for protection under Chapter 11 of the United States Bankruptcy Code. (D.I. 8 at 4.) The Official Committee of Unsecured Creditors (the "Committee") was formed on or about October 2, 2002. (*Id.*) Shortly thereafter, Peregrine and the Committee agreed that certain materials provided by Peregrine to the Committee would be treated as confidential. (D.I. 13 at 4.) According to Peregrine, it then provided a number of confidential documents to the Committee, including the Latham Report. (*Id.* at 4.) On October 22, the bankruptcy court entered an order (the "Sealing Order") that authorized the Committee to file under seal confidential documents that it obtained from Peregrine pur-

---

**2.** According to Peregrine, it "develops and markets software that, among other things, enable business customers to be more competitive by reducing infrastructure costs and increasing efficiency." (D.I. 13 at 2.)

**3.** In addition, Peregrine states that "[b]ecause of the circumstances under which it was created," the Latham Report contains statements

that "would be harmful to potentially innocent third parties." (D.I. 13 at 3.) Moreover, Peregrine says that the Latham Report "contains confidential business information, such as the identities of Peregrine's customers and reseller/partners, and detailed information regarding certain business transactions." (*Id.*)

suant to a confidentiality agreement.[4] (*Id.*)

On November 13, 2002, the Committee filed a motion under seal to seek the appointment of a Chapter 11 Trustee. (D.I. 13 at 5.) The accompanying exhibits of that motion were also filed under seal, including the Latham Report. (*Id.*) As Peregrine conceded at oral argument (Nov. 6, 2003 transcript at 18–21), the appointment of a Chapter 11 Trustee would have been extraordinary relief and the Latham Report was apparently submitted because the Committee believed it to contain information which would be persuasive evidence justifying that extraordinary appointment. On November 18, the bankruptcy court held an omnibus hearing with the parties, and, at the hearing, Bruce Bennett, counsel for the Committee stated that the Committee "stipulate[s] that everything we filed [under seal] can be opened." (D.I. 3 at Ex. 9, p. 37.) However, the bankruptcy court declined to unseal the documents. (*Id.*) At the same hearing, the bankruptcy court set a litigation schedule on the Committee's motion to appoint a Chapter 11 Trustee. (*Id.* at 7.)

On December 23, 2003, Copley filed a motion to intervene and unseal documents that had been filed under seal, including the Latham Report. (*Id.*) Copley's motion was heard by the bankruptcy court at an omnibus hearing on January 28, 2003. (D.I. 13 at 7.) At the January 28, 2003 hearing, the Bankruptcy court expressed doubt that the Committee's filing of the full Latham Report was proper. The bankruptcy court stated:

I'm not sure that the parties ... who filed these documents had the right to file them in the first place. That's my concern. I have looked at the Latham Report. The Latham report I think has some contentions in it that really could be disruptive and very harmful to certain individuals who are not before this Court, may have no idea that this would be happening to them, have not had any notice that there might be some document that they don't even know about that's now filed and public record in a bankruptcy court. At best it seems to me that some of that report may very well be relevant to the motion to appoint a trustee or other matters that are pending. But that entire document is not relevant and should not have been filed without being redacted.

\* \* \* \* \* \*

So I think the appropriate resolution on the issues that are currently before me today is to have the ... Creditors Committee ... go back and redact the information to preserve and protect the privacy rights of individuals who have no notice of the fact that this is going on.

(D.I. 8 at Ex. A, p. 82.) Later in the hearing, the bankruptcy court decided, *sua sponte,* to strike the Latham Report from the record and provided that the Committee could file a redacted version at a later time. The bankruptcy court's reasoning for this decision was stated as follows:

I am permitted to strike irrelevant, harassing, and other types of evidence that cause potential problems to individuals particularly who are not before the Court. The Latham Report contains in-

---

4. Section One of the Sealing Order provides that "The Committee shall be authorized to file Confidential Materials under seal without further order of the Court in accordance with the Court's usual procedures for filing materials under seal." (D.I. 8 at 5.) Section Three of the Sealing Order provides that "Nothing in this Order shall constitute a finding by this Court, or an admission by the Committee, that any Confidential Materials filed under seal are in fact confidential and entitled to remain confidential." (*Id.*)

formation that I believe falls well within my prerogative in striking the document .... [T]his report, as it's currently constituted, I think is a problem. I don't think it's relevant in all its particulars to this motion. I think it causes some problems under the Rules of Civil Procedure. I don't think it's totally admissible under the Rules of Evidence, and I'm not sure why it's on my docket.

\* \* \* \* \* \*

The information with respect to the Latham Report, I think I'm going to handle differently. I believe it was improperly filed. I do not think at this point it's relevant to anything. If it is relevant to something it will be admitted into evidence in relevant parts on the motion to appoint the trustee. I see no reason to have that document on this Court's record at this time. It's before the SEC. If you want it, file a [Freedom Of Information Act] request and deal with it there. I'm going to strike that out, the Latham [Report], because I see no basis for it, and it seems to me that it does not in all its particulars comport with the Federal Rules of Civil Procedure. It may very well be admitted into evidence at trial, and if it is it will be on the public record.

\* \* \* \* \* \*

With respect to the Latham Report, it is stricken and will be returned to Mr. Bennett subject, however, to being offered and/or admitted into evidence in whole or in part at the trial on the motion to appoint a trustee.

(D.I. 8 at Ex. A, p. 85–86; 90–91; 94–95.)

Copley then raised the matter of the Committee's pending motion *in limine* to determine the admissibility of the Latham Report, which was, as stated, submitted in its entirety. (*Id.* at 98–99.) Copley sought access to the Latham Report on the ground that the public right of access attaches to materials offered in evidence regardless of the court's ultimate decision as to admissibility. (*Id.*) The bankruptcy court responded:

Oh, I agree with that, the fact that the public has the right to critique that decision, but as I said earlier, I think there are parts of this report that right now have very little to do with the motion to appoint a trustee because of the issue that may arise with respect to other individuals who are not before this Court at this time.

\* \* \* \* \* \*

Let me put in a format that I think is going to be clear. I have stricken the Latham report. I am going to return it to Mr. Bennett. When he files a motion to have its admissibility determined, I expect that I'm going to get a redacted version—or I shouldn't say redacted but I'm going to get from him the part that he expects to admit into evidence. I do not think that all of that report, and this is a preliminary view, I haven't heard any evidence yet, but from looking at the report, I do not think all [of] it is going to be relevant to the motion to appoint a trustee. So I don't think it's going to be necessary for him to submit that entire report. That's just the way I think. Now, If I'm wrong, and he submits the entire report, then he'll do it understanding that if there are privacy rights of people who are violated that he and his committee at some point in time may stand to suffer for it. That will be his burden at that point.

(*Id.* at 99–100.) The Committee then agreed to withdraw its motion *in limine* without prejudice, and to re-file it, at some future point, seeking admission of only limited portions of the Latham Report. (*Id.* at 101–102.) In the end, the Committee never refiled its motion *in limine* because

the parties reached an agreement with regard to the appointment of a trustee. (D.I. 13 at 12.)[5] Accordingly, because the "redacted" version was never re-submitted, the entire Latham Report remained stricken from the record.

On February 1, 2003, Copley filed a motion for reconsideration, asking the bankruptcy court to reconsider its decision to deny public access to the Latham Report. (D.I. 8 at 13.) At a hearing on March 25, 2003, the bankruptcy court reiterated its view that it had cause to deny the public access to the Latham Report because the Report had been inserted into the record inappropriately:

> [J]ust because somebody chooses to file something—I'll use an example [of] a trial judge that I practiced before ... used. If I choose to file a roll of toilet paper that's not relevant to anything, then what good is the roll of toilet paper? It's not relevant to anything. Well, just because somebody chooses to file a roll of toilet paper, I'm not sure that that gives the world the right of access to it.
>
> * * * * * *
>
> [The Latham Report], now that the motion has been withdrawn, doesn't meet any of those evidentiary standards because there's no motion to which it attaches. And to the extent that that motion was ever going to be heard at trial, if the document was properly introduced, then it should have been introduced at that time. But the Parties in support of a motion don't generally attach documents. They attach arguments, not documents, until they're getting ready for trial. Just because

somebody files it doesn't mean that it's appropriately filed.

 * * * * * *

> The point is whether or not at this point there is any document that should even exist on court file, not whether it's relevant to something at all. The issue is should that document have been filed? And, in my view, until it was—it became an evidentiary matter, it should not have been filed. If it became an evidentiary matter, I agree that at that point the public has the right of access, but just because somebody chooses to take a confidential document and put it on record in the court file doesn't mean, I think, that the world has the right of access. There's a privacy component to this that is as equally important as the public component.

(D.I. 8 at Ex. B, pp. 30, 31, 32.) The bankruptcy court further explained that, in its view, the Latham Report should not have been filed because:

> It had no evidentiary significance because there wasn't an evidentiary hearing set, and I really don't know why I have to go through an analysis line-by-line of that document. I would have had to do that had it been offered into evidence, but it should not have been filed. I agree with the concept that it was a strategic issue in terms of putting it before the Court so that I could read everything at the time, but the reality is it was, until time to submit evidence, I think not appropriate in support of the motion. It can be an exhibit to a motion, but that's an evidentiary issue, and we never got to an evidentiary hearing.

---

**5.** The Committee and Peregrine reached a resolution regarding the composition of Peregrine's Board of Directors and the Committee therefore withdrew its motion to appoint a trustee. (D.I. 13 at 13.) On March 28, 2003, the bankruptcy court granted Copley's motion to withdraw the trustee motion. (*Id.*)

I really do not know why I need to address the Latham report any further. (D.I. 3 at Ex. 23, p. 80.)

On May 27, 2003, the bankruptcy court vacated the Sealing Order. (D.I. 13 at 14.) Peregrine states that "[s]ince that time, the parties have been in the process of reviewing, redacting, and unsealing documents that had previously been filed under seal. Some of the documents have been unsealed completely, some of the documents have been unsealed in a redacted version, and some are still in the process of being reviewed." (*Id.* at 15.) On June 16, 2003, the bankruptcy court entered an order denying Copley's motion for reconsideration. (D.I. 8 at Ex. C.) Copley filed this notice of appeal on June 24, 2003. (D.I. 1.)

### III. Standard of Review

■■■ On appeal, the court applies a clearly erroneous standard to the bankruptcy court's findings of fact and a plenary standard to that court's legal conclusions. *See Flint Glass Workers Union v. Anchor Resolution Corp.,* 197 F.3d 76, 80 (3d Cir.1999). When reviewing mixed questions of law and fact, the court must accept the bankruptcy court's "finding of historical or narrative facts unless clearly erroneous, but exercises 'plenary review of the [bankruptcy] court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.'" *Mellon Bank, N.A. v. Metro Communications, Inc.,* 945 F.2d 635, 642 (3d Cir.1991) (citing *Universal Minerals, Inc. v. C.A. Hughes & Co.,* 669 F.2d 98, 101–02 (3d Cir.1981)).

### IV. Discussion

#### A. The Appeal

##### 1. Mootness

■■■ Peregrine argues that Copley's appeal is moot because "[o]nce the Commit-

tee and [Peregrine] reached [an] agreement on the appointment of a trustee, and the Committee withdrew its [motion], the Latham Report became utterly irrelevant to the issue pending before the Bankruptcy Court." (D.I. 13 at 15–16.) Furthermore, Peregrine asserts that the Report is no longer in the custody of the bankruptcy court and that neither the Committee nor Peregrine "has any interest in resubmitting it." (*Id.* at 16.)

Copley asserts that even though the underlying motion had been withdrawn, the Latham Report did not lose its status as a judicial record subject to the right of access. (D.I. 8 at 22–23, D.I. 17 at 6) (citing *In re Continental Illinois Sec. Litig.,* 732 F.2d 1302, 1309–1310 (7th Cir.1984) ("withdrawal of the motion is immaterial to whether the presumption of access applies" to the document at issue because the report was the basis for factual and legal findings of the court)). Copley also states that the Latham Report remains under the control of the bankruptcy court. (D.I. 17 at 6.) At the March 25, 2003 hearing, the bankruptcy court said:

> Okay. Well, to the extent that I struck the document, I also required the party that filed it to maintain it, so that in the event I determine there's a right of access, it's available and can be reproduced before the Court. So, I think in terms of that remedy, the document is there, and it can be reproduced. In fact, I'm sure it exists in lots of other places where the Court can acquire it if need be. If that's the issue you're getting to, my right, my striking it from the record also directed the party to maintain it until further order.

(D.I. Ex. 8 at 35.) Because the public right of access, while not unfettered, did attach to the Latham Report when Copley submitted it to the bankruptcy court, *see*

*infra* part 2, and the irrelevancy of the contents of documents is not alone a basis for denying public access, *see Joint Stock Society,* 104 F.Supp.2d at 402–403, and because the bankruptcy court still has control over the Latham Report, Copley's appeal is not moot.

## 2. Public Right of Access

 Copley's motion to intervene in this case and motion to unseal the Latham Report is based on the public's common law right of access to judicial proceedings and records. The existence of such a right is beyond dispute. *See, e.g., Miller v. Indiana Hospital,* 16 F.3d 549, 551 (3d Cir.1994); *Leucadia, Inc. v. Applied Extrusion Tech.,* 998 F.2d 157, 158 (3d Cir. 1993); *Littlejohn v. BIC Corp.,* 851 F.2d 673, 677–78 (3d Cir.1988). "Access means more than the ability to attend open court proceedings; it also encompasses the right of the public to inspect and to copy judicial records." *Littlejohn,* 851 F.2d at 678. This right of access applies to substantive motions in judicial proceedings. *Leucadia, Inc.,* 998 F.2d at 164.

As the Third Circuit has explained,

[t]he public's exercise of its common law access right in civil cases promotes public confidence in the judicial system by enhancing testimonial trustworthiness and the quality of justice dispensed by the court. As with other branches of government, the bright light cast upon the judicial process by public observation diminishes possibilities for injustice, incompetence, perjury, and fraud. Furthermore, the very openness of the process should provide the public with a more complete understanding of the judicial system and a better perception of its fairness. In addition, access to civil proceedings and records promotes "public respect for the judicial process" and helps assure that judges perform their duties in an honest and informed manner.

*In re Cendant Corp.,* 260 F.3d 183, 192 (3d Cir.2001) (citations and internal quotations omitted).

 Copley correctly argues that once the Committee filed the motion to appoint a trustee, with the Latham Report attached as an exhibit, it became a judicial record subject to a presumptive right of access. (D.I. 8 at 18; D.I. 17 at 12.) It is well established in the Third Circuit that the filing of a document with the court renders it a judicial record that is subject to the right of access. In *In re Cendant Corp.* the Third Circuit explained that

[w]hether or not a document or record is subject to the right of access turns on whether that item is considered to be a "judicial record." ... The status of a document as a "judicial record," in turn, depends on whether a document has been filed with the court, or otherwise somehow incorporated or integrated into a district court's adjudicatory proceedings.... [F]iling clearly establishes such status....

260 F.3d at 192. *See also Leucadia,* 998 F.2d at 161–162 ("[T]he filing of a document gives rise to a presumptive right of access"); *Joint Stock Society v. UDV N. Am., Inc.,* 104 F.Supp.2d 390, 402–403 (D.Del.2000) ("[A]ll materials that are the subject of an evidentiary ruling by the court, whether or not found admissible, are part of the records for purposes of the public's right to inspect and copy"); *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.,* 529 F.Supp. 866, 897 (E.D.Pa. 1981) ("The right [of public access] undoubtedly attaches to all materials that are filed with the clerk of court, unless filed under seal pursuant to court order, because they are so clearly records within the meaning of the doctrine"). *Cf. Pansy v. Borough of Stroudsburg,* 23 F.3d 772,

783 (3d Cir.1994) (stating that the First Circuit, in *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir.1987), "articulated a persuasive and perhaps desirable rule" in holding that documents not even part of the court file were accessible under the right of access doctrine because "they were duly submitted to the court" and were "relevant and material to the matters *sub judice* ").

■ Peregrine argues that the Latham Report was never a judicial record subject to the public's right of access because it was initially filed under seal, and thus no right of access could attach to it at that time. (D.I. 13 at 29) (quoting *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 529 F.Supp. 866, 897 (E.D.Pa.1981) ("The right [of public access] undoubtedly attaches to all materials that are filed with the clerk of court, unless filed under seal pursuant to court order.")). However, even though the public may not have a right of access to a sealed document, a document filed under a blanket sealing order is still a judicial record that is at least subject to the assertion of a right of access. *See Leucadia*, 998 F.2d at 165. The public has the right to challenge the sealing of a particular document.

■ Peregrine also asserts that "even though courts have often focused on the act of filing as giving rise to a presumptive right of access," the right of access should be limited to documents to be considered by the Court as part of a judicial decision. (*Id.* at 30.) The Third Circuit rejected this argument in *Littlejohn*, 851 F.2d at 685 n. 28 (rejecting the argument that "a presumption of public access to evidence admitted at trial cannot be applied absent a case-by-case review of the extent to which the evidence formed the basis of any even-

tual decision"). Additionally, Peregrine cites *Littlejohn*, 851 F.2d at 683, for the proposition that there is no right of public access to trial exhibits that were no longer on file with the court after they were returned to the owners. Peregrine also cites *Pansy*, 23 F.3d at 783, for the idea that there was no right of access to a settlement agreement where the agreement was returned to the parties without having been filed. (D.I. 13 at 31.) However, both cases are distinguishable on the points for which Peregrine cites them. Unlike the settlement agreement in *Pansy*, the Latham Report was actually filed with the court, and unlike *Littlejohn*, the request for access in the present action came in an active case and was made before the Latham Report was removed from the record. In *Littlejohn*, the request for access came after the case was closed and the evidence had been returned to the parties.

Because the Latham Report was a judicial record and thus, unless properly sealed, presumptively subject to the right of access, the bankruptcy court was obligated, when Copley brought its motion to unseal the Report, to make a determination as to whether any or all of the Latham Report should remain under seal. *See infra* part 3.

### 3. Protective Orders [6]

■ As previously noted, the Committee filed the Latham Report under seal. Federal Rule of Civil Procedure 26(c)(7) authorizes a court to "make any order which justice requires," and, with regard to commercial information, to enter an order that "commercial information not be revealed or be revealed only in a designat-

6. Since protective orders, confidentiality orders, and sealing orders are "functionally similar," *see Pansy*, 23 F.3d at 786, these terms are used interchangeably in this section.

ed way ...." A court also has the "inherent equitable power to grant confidentiality orders, whether or not such orders are specifically authorized by procedural rules." *Pansy,* 23 F.3d at 785.

■ When parties need to exchange voluminous documents and information, with a substantial likelihood that a large number of documents contain confidential information, "because of the benefits of umbrella protective orders in cases involving large scale discovery, the court may construct a broad umbrella protective order upon a threshold showing by the movant of good cause." *Pansy,* 23 F.3d at 787 n. 17. However, as already discussed, the Federal Rules of Civil procedure permit members of the public to challenge an overly protective sealing order. *Leucadia,* 998 F.2d at 165 (citing *In re Agent Orange Prod. Liab. Litig.,* 821 F.2d 139, 146 (2d Cir.1987)).

■ Where a protective order is challenged on the grounds that it affords inadequate public access to judicial records, the Court must balance the strong common law presumption of access "against the factors militating against access." *Leucadia,* 998 F.2d at 165 (quoting *Bank of America National Trust & Savings Assoc. v. Hotel Rittenhouse Assoc.,* 800 F.2d 339, 344 (3d Cir.1986)). *See also In re Cendant Corp.,* 260 F.3d at 194 (the "party seeking the closure of a hearing or the sealing of part of the judicial record bears the burden of showing that the material is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure.... As is often the case when there are conflicting interests, a balancing process is contemplated") (citation and quotations omitted); *Pansy,* 23

F.3d at 786 (good cause must be shown to justify a protective order and "[g]ood cause is established on a showing that disclosure will work a clearly defined and serious injury the party seeking disclosure. The injury must be shown with specificity.... The burden of justifying the confidentiality of each and every document sought to be covered by a protective order remains on the party seeking the order").

In the present action, Copley, by making its motion to unseal, challenged the "umbrella" protective order entered by the bankruptcy court. However, rather than conducting an analysis to determine whether the factors "militating against access" outweighed the public interest in disclosure, which, Copley believes, if done, would have left at least a portion of the Latham Report for the public to review (D.I. 17 at 16), the bankruptcy court struck the entire Latham Report from the record.

Significantly, subsequent to striking the Latham Report, the bankruptcy court vacated the Sealing Order and "the parties have been in the process of reviewing, redacting, and unsealing documents that had previously been filed under seal." (D.I. 13 at 14–15.) Peregrine asserts that "some of the documents have been unsealed completely, some have been unsealed in a redacted version, and some are still in the process of being sealed." (*Id.*)

That type of analysis and balancing process was required after Copley filed its motion to unseal the Latham Report, but it did not occur.[7]

### 4. Authority of the bankruptcy court to strike the Latham Report

Peregrine argues that striking the Latham Report from the record was proper

7. Although the bankruptcy court "looked at" the Latham Report (D.I. 8 at Ex. A, p. 82), it is unclear what that means. It does appear, however, that the bankruptcy court did not

determine that all of the information in the Latham Report was irrelevant to the motion to appoint a trustee.

690

because the bankruptcy court had the authority and discretion to do so in light of its concern that the "document contained confidential and potentially very harmful material regarding third parties, most of which was obviously irrelevant to the issue of whether a trustee should be appointed." (D.I. 13 at 19–20; *see also* D.I. 8 at Ex. A, p. 82.)

■ Under 11 U.S.C. § 105(a), bankruptcy courts may "issue an order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Section 105 specifically codifies what are traditionally called "inherent powers"[8] to give the bankruptcy courts the necessary ability to manage the cases on their docket. Those powers provide courts with "the necessary authority to manage the arguments and conduct of parties to ensure judicial efficiency and to do justice." *In re Johnson*, 236 B.R. 510, 521 (D.D.C.1999) (*citing Roadway Express v. Piper*, 447 U.S. 752, 765, 767 n. 14, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980)). In addition, Rule 9018 of the Rules of Bankruptcy Procedure gives a bankruptcy court the power "[o]n motion or on its own initiative, with or without notice" to "make any order which justice requires . . . to protect any entity against scandalous or defamatory matter contained in any paper filed in a case under the Code."

■ The bankruptcy court was appropriately concerned with the privacy interests of third parties who were not before the court, and it is well established that a court has the power and discretion to strike a document in order to protect legitimate interests.[9] Indeed, while it may be presumptuous, I believe I understand the entirely legitimate interests and concerns underlying the bankruptcy court's ruling in this matter. Whether for proper reasons or for the improper *in terroram* effect that putting the entire Latham Report in the record would have on the debtor, the Committee filed the full Report with its motion for the appointment of a trustee. The bankruptcy court was then put to the burden of dealing with reporters' demands to see the tantalizing tales of corporate malfeasance that people suspected the report contained. Moreover, as the court noted, the filing of the report was wholly premature. It was not clear when or even if the court would need to take evidence on the motion.[10] Hence, there was understandable appeal to striking the document in its entirety, with the direction that it be refiled later if appropriate. The problem with that solution, though, is that it vastly undervalues the right of public access which in fact has been undermined by the Committee's action and the bankruptcy court's order to strike. In *In re Cendant Corp.*, 260 F.3d at 197, the Third Circuit stated that "[t]he discretion that exists [to

---

**8.** *See In re Stone*, 986 F.2d 898, 901–903 (5th Cir.1993) ("Where it appears that a court cannot adequately and efficiently carry out its duties without employing some special device, the court has the inherent power to do so").

**9.** "Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes." *Littlejohn*, 851 F.2d at 678 (quoting *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978)). Thus, the common law establishes a presumption of

public access to court proceedings and records, but the "courts may deny access to judicial records, for example, where they are sources of business information that might harm a litigant's competitive standing." *Id.*

**10.** Because the Committee and Peregrine settled their dispute over the appointment of a trustee, it turned out no evidence was necessary, and the frustration attendant to the drain on judicial resources may thereby have been compounded in this case.

balance the factors for and against access] ... must be exercised properly because the issuance of a confidentiality order overriding the common law right of access contemplates an analytical process." Therefore, once the motion to unseal was made, the bankruptcy court was required to make a determination as to whether any or all of the Latham Report should have remained under seal.

 If the facts were different, and if the bankruptcy court had decided to strike the Latham Report from the record when it was initially filed, before a motion to unseal was made, the decision to strike may have been a valid exercise of power properly within the bankruptcy court's discretion. Striking the Latham Report from the record also may have been proper if the bankruptcy court had simultaneously ordered the Committee to refile a redacted version, since a redacted version would have addressed both the privacy concerns of the uninvolved third parties and the right of access. However, that is not what happened.

Here, the uncontradicted facts demonstrate that the Committee filed under seal a motion to appoint a trustee. The Committee also filed a *motion in limine* to determine the admissibility of the Latham Report, which, as both the bankruptcy court and Peregrine acknowledged, was relevant to the motion to appoint a trustee. (D.I. 8 at Ex. A, p. 82; D.I. 27 at 24–25.) Copley later intervened in the case, invoking its right of public access, and made a motion to unseal the Latham Report. It was in response to that motion that the bankruptcy court decided to strike the Report from the record. That action in that specific context was improper in light of the public's right of access to judicial records and was an abuse of the bankruptcy court's discretion. Accordingly, the bankruptcy court's decision to strike the Latham Report from the record must be reversed and remanded. Upon remand, the bankruptcy court shall cause the Latham Report to be placed back into the public record, subject to the Sealing Order, and the party seeking the continued sealing of the Report, namely Peregrine, shall, in accordance with the standards set forth by the Third Circuit, show justification for having the Latham Report, or any part of it, remain under seal.[11]

## B. The Motion to Compel

Because I have ordered the bankruptcy court to place the Latham Report back into the record, and it will be reviewed in accordance with the public access standards set forth by the Third Circuit, Copley's motion to compel will be denied at moot.

## C. The Motion for Judicial Notice

Peregrine, in its motion for judicial notice (D.I. 19), requests that I take judicial notice of the "Transcript of the Omnibus Hearing before Honorable Judith K. Fitzgerald United States Bankruptcy Judge", "Order Pursuant to Section 1129 of the Bankruptcy Code Confirming Debtor's Fourth Amended Plan of Reorganization,

---

11. It should not be assumed that, after the bankruptcy court undertakes the balancing and analytical process explained above, Copley will actually get any part of the Latham Report. After private third party information, confidential business information, and information protected by the attorney client privilege or as attorney work product is removed, there may be nothing left of the Latham Report to unseal. Because the Committee has now been disbanded, it may not be possible to lay at its doorstep the cost associated with its decision to file the full Report. If that is in fact the case, more's the pity, because my decision on this appeal is not intended as a refutation the bankruptcy court's concern that the Committee was not justified in filing the Report in the first instance.

as Modified, Dated July 14, 2003," "Stipulation and Order Authorizing Creditors Committee to File Documents Under Seal," Confidentiality Agreement with the SEC, Department of Justice Subpoena, and "Fourth Amended Plan of Reorganization of [Peregrine] as Modified, Dated July 14, 2003." (D.I. 21 at Exs. A–F.)

 Federal Rule Of Evidence 201 provides, "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Because a court may take judicial notice of "matters of public record," *Lee v. City of Los Angeles,* 250 F.3d 668, 689 (9th Cir. 2001); *see also In re NAHC, Inc. Sec. Litig.,* 306 F.3d 1314 (3d Cir.2002), and it is not unfair to Copley to do so, I will take judicial notice of these documents. *See In re Indian Palms Assocs., Ltd.,* 61 F.3d 197 (3d Cir.1995) ("Judicial notice may be taken at any stage during the proceeding, including on appeal as long as it is not unfair to a party to do so and does not undermine the trial court's factfinding authority") (citations omitted). However, I will take judicial notice only of the existence and contents of these documents, without making any determination regarding the truth of any facts represented therein. Accordingly, Peregrine's motion for judicial notice will be granted.

## V. Conclusion

For the reasons set forth herein, this case will be reversed and remanded. An appropriate order will issue.

### ORDER

For the reasons set forth in the Memorandum Opinion issued on this date,

The decision of the bankruptcy court to strike the Latham Report from the record is reversed and remanded. The bankruptcy court shall cause the Latham Report to be placed back into the public record, subject to the Sealing Order in the case, and the Appellees shall justify having the Latham Report, or any part of it, remain under seal. The Appellant's motion to compel (D.I. 7) is DENIED as moot. The Appellees' motion for judicial notice (D.I. 19) is GRANTED.