**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 92-1406
_____

IN RE:  M.P.W. STONE,

                              Petitioner.


_____

No. 92-1462
_____

IN RE:  INTERNAL REVENUE SERVICE
                  and
        SONJA ROUNDTREE,

                              Petitioners.


_____

No. 92-1573
_____

IN RE:  UNITED STATES OF AMERICA,

                              Petitioner.


_____

No. 92-1592
_____

IN RE:  UNITED STATES OF AMERICA,

                              Petitioner.

_____

No. 92-1625

_____


IN RE:   GOVERNMENT NATIONAL MORTGAGE ASSOCIATION
and
UNITED STATES OF AMERICA,

                                    Petitioners.



_____

No. 92-1909

_____


IN RE:   UNITED STATES OF AMERICA,

                                    Petitioner.


_____

No. 92-1977

_____


IN RE:   UNITED STATES OF AMERICA,

                                    Petitioner.


_____

No. 92-9004

_____


IN RE:   UNITED STATES OF AMERICA,

                                    Petitioner.


2

_____

No. 92-9065

_____


IN RE:   UNITED STATES OF AMERICA,

                                    Petitioner.


_____

No. 93-1032

_____


IN RE:   UNITED STATES OF AMERICA,

                                    Petitioner.


_____

No. 93-1094

_____


IN RE:   UNITED STATES OF AMERICA,

                                    Petitioner.


_____

No. 93-1192

_____


IN RE:   UNITED STATES OF AMERICA,

                                    Petitioner.


_____

Petitions for Writs of Mandamus to
the United States District Court
for the Northern District of Texas
_____
(March 12, 1993)


3

Before JOLLY, DAVIS, and SMITH, Circuit Judges.

PER CURIAM:

In these petitions seeking writs of mandamus, we decide whether a federal district judge has the power, by a standing order, to direct the federal government to send a representative with full settlement authority to settlement conferences and, if so, whether he abused his discretion by so doing in these routine civil lawsuits involving the United States. In addition to requiring counsel to attend these conferences, the court also requires the attendance of a designated representative of each party with full authority to settle the case; that representative must appear in person )) availability by telephone is not sufficient. We conclude that although the district judge possesses the ultimate power to require the attendance at issue, it is a power to be very sparingly used, and here the district judge, albeit with the best of intentions, has abused his discretion.

I.

In each of the petitions before us, the federal government objects to this order as applied to it. By statute, the Attorney General of the United States has the power to conduct all litigation on behalf of the United States, its agencies, and its officers, unless otherwise provided by law. 28 U.S.C. § 519 (1988). Pursuant to authority given by 28 U.S.C. § 510 (1988), the Attorney General has developed a set of regulations delegating settlement authority to various officials. See 28 C.F.R. §§ 0.160-

4

0.172 (1991); see also directives reprinted at 28 C.F.R. pt. 0, subpt. Y app. (1991).

As we read these regulations, United States Attorneys often will be able to settle a case without approval from a higher authority, as the regulations provide that each local United States Attorney has settlement authority up to $500,000. If the client agency disagrees with the United States Attorney over the terms of the settlement, however, an Assistant Attorney General must approve the settlement. 28 C.F.R. § 0.168(a). In addition, settlements in various classes of important cases always must be approved by the Deputy Attorney General or one of the Assistant Attorneys General. See 28 C.F.R. §§ 0.160, 0.161.[1]

II.

Although it is historically reserved for "extraordinary" cases, we have used the writ of mandamus as a "one-time-only device to `settle new and important problems' that might have otherwise evaded expeditious review." In re Equal Employment Opportunity Comm'n, 709 F.2d 392, 394 (5th Cir. 1983) (quoting Schlagenhauf v. Holder, 379 U.S. 104 (1964)). As district courts continue to become more heavily involved in the pretrial process, appellate courts may be asked more often to issue writs of mandamus to protect the asserted rights of litigants. Pretrial orders such as

---

[1] Even if a case is to be settled for not more than $500,000, so that a United States Attorney could settle it under the regulations, his settlement authority disappears upon disagreement over the terms of the settlement by the client agency.

the ones before us raise important issues but are ill-suited for review after final judgment.

Because these cases present an important, undecided issue involving the efficient administration of justice, we may appropriately invoke mandamus review. See id. In fact, the district judge who issued the instant directives has acknowledged, in his responses to the petitions, that the issue is appropriate for review on petitions for writs of mandamus. We will grant the writ only "when there is `usurpation of judicial power' or a clear abuse of discretion." Id. at 395 (quoting Schlagenhauf, 379 U.S. at 110). The government has the burden of establishing its right to issuance of the writ. Id.

III.

A.

The district court claims inherent power to issue the order. As explained helpfully in Eash v. Riggins Trucking, 757 F.2d 557, 562-64 (3d Cir. 1985) (en banc), there are three general categories of inherent powers.

The first category delineates powers that are "so fundamental to the essence of a court as a constitutional tribunal that to divest the court of absolute command within this sphere is really to render practically meaningless the terms `court' and `judicial power.'" Id. at 562. In other words, once Congress has created the court, article III of the Constitution vests the courts with certain implied powers. See Anderson v. Dunn, 19 U.S. (6 Wheat.)

204, 227 (1821). Within the scope of these powers, the other branches of government may not interfere; any legislation purporting to regulate these inherent powers would be invalid as an unconstitutional violation of the doctrine of separation of powers.[2]

Fortunately, history provides few examples of legislative attempts to interfere with the core inherent powers of the judicial branch. But as a result, prior jurisprudence has not identified exactly which inherent powers fall into this category, and we will not attempt to do so here. At least one decision of the Supreme Court appears to have identified one such power. See United States v. Klein, 80 U.S. (13 Wall.) 128, 146-47 (1872). Although the meaning of the opinion has been subject to some debate, Klein seems to hold that Congress may not interfere with a court's inherent power to decide cases by dictating the result in a particular case. 80 U.S. at 146-47.

The second category of inherent powers encompasses those "necessary to the exercise of all others." Roadway Express v. Piper, 447 U.S. 752, 764 (1980) (quoting United States v. Hudson, 11 U.S. (7 Cranch) 32, 34 (1812)). For the most part, these powers are those deemed necessary to protect the efficient and orderly administration of justice and those necessary to command respect for the court's orders, judgments, procedures, and authority. Id.

---

[2] See Michaelson v. United States, 266 U.S. 42, 64 (1924) (recognizing that the Constitution vests courts with some powers unalterable by legislation); Eash, 757 F.2d at 562 (noting that courts may exercise this category of powers despite legislation to the contrary).

Like the first category of inherent powers, this category also stems from article III, once Congress creates the court. Michaelson, 266 U.S. at 65-66. Congress may interfere with this category of inherent power within "limits not precisely defined," so long as it does not abrogate or render the specific power inoperative. Id.

Courts have recognized several examples of this type of inherent power. The contempt sanction long has been recognized as among the most important of these powers. Id. at 65; Hudson, 11 U.S. at 34. In addition, the Supreme Court has recognized the power to levy sanctions in response to abusive litigation practices. Roadway Express, 447 U.S. at 766 (court may assess attorneys' fees against counsel who abuses judicial processes); Link v. Wabash R.R., 370 U.S. 625, 630-31 (1962) (court may sua sponte dismiss case for failure to prosecute).

The third category of inherent powers includes those reasonably useful to achieve justice. Eash, 757 F.2d at 563. This category of powers recognizes that the legislature cannot foresee every tool the courts might need to employ to reach a just result in all cases. Where it appears that a court cannot adequately and efficiently carry out its duties without employing some special device, the court has inherent power to do so. Ex parte Peterson, 253 U.S. 300, 312 (1920). This category of inherent power arises from mere necessity and, consequently, can be completely regulated by Congress. See id. As an example of this type of power, the Supreme Court has upheld the power of a district court to appoint

8

an auditor to aid in litigation involving a complex commercial matter.  Id.; see also Ruiz v. Estelle, 679 F.2d 1115, 1161 (5th Cir. 1982), cert. denied, 460 U.S. 1042 (1983).

By employing the above three categories, we may now establish a method for reviewing purported exercises of inherent powers. Initially, we must determine in which category the invoked power belongs.  If the power belongs in the first category, any statute that seems to interfere with the power is unconstitutional under the doctrine of separation of powers.

If the power belongs in the second category, we must ascertain whether a valid statute or rule attempts to regulate the court's use of the power.  If such a law exists, we then must determine whether the law abrogates or renders the power practically inoperative.  Michaelson, 266 U.S. at 66.

Where the law sufficiently weakens the court's inherent powers, we will strike it down as an unconstitutional violation of the doctrine of separation of powers and will review the court's actions for abuse of discretion.  When, however, the law can be characterized as an appropriate regulation of inherent powers, we will prevent the district court's exercise of power if that exercise either violates the law or constitutes an abuse of discretion.

Finally, where there is no law or rule that governs the invoked inherent power, we review the district court's actions for abuse of discretion.  Link, 370 U.S. at 633.  Of course, we need not address the issues in the order set out above.  We also note

that, while we review the court's exercise of such powers only for abuse of discretion, we define the powers narrowly, as they are shielded from effective democratic control and must be exercised with restraint. <u>Roadway Express</u>, 447 U.S. at 764.

Finally, if the power fits in the third category, we also must determine whether a valid statute or rule prevents the court from exercising a specific inherent power. If so, the district court may not exercise that power.

### B.

The district court's standing order invokes its inherent power to manage its own docket to achieve the just and efficient disposition of cases. <u>Landis v. North Am. Co.</u>, 299 U.S. 248, 254 (1936) (court has inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants"); <u>Edwards v. Cass County</u>, 919 F.2d 273, 275 (5th Cir. 1990); <u>Taylor v. Combustion Eng'q</u>, 782 F.2d 525, 527 (5th Cir. 1986).[3] On the basis of our discussion above, we conclude that this power fits most appropriately in the second

---

[3] Several of our sister circuits, similarly, have opined that such general inherent authority resides in the district courts. <u>See</u>, <u>e.g.</u>, <u>In re Novak</u>, 932 F.2d 1397, 1405, 1407 (11th Cir. 1991) ("[T]he power to direct parties to produce individuals with full settlement authority at pretrial settlement conferences is inherent in the district court."); <u>Heileman Brewing Co. v. Joseph Oat Corp.</u>, 871 F.2d 648, 656 (7th Cir. 1989) (en banc) (district courts have "`inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases"). We reiterate that such inherent power, though broad, is subject to the abuse-of-discretion standard.

category.[4]

## C.

We are able to conclude, based upon the foregoing, that, subject to the abuse-of-discretion standard, district courts have the general inherent power to require a party to have a representative with full settlement authority present )) or at least reasonably and promptly accessible )) at pretrial conferences.  This applies to the government as well as private litigants.  We find no statute or rule that attempts to regulate the court's use of that inherent power.  But a district court must consider the unique position of the government as a litigant in determining whether to exercise its discretion in favor of issuing such an order.[5]

---

[4] In defense of its standing order, the district court also asserts the authority of the local district rules and of FED. R. CIV. P. 83, which permits district courts to adopt local rules and states that "[i]n all cases not provided for by rule, the district judges and magistrates may regulate their practice in any manner not inconsistent with these rules or those of the district in which they act."  The local rules require "[t]he parties in every civil action [to] make a good-faith effort to settle" and to enter into settlement negotiations at the earliest possible time.  N.D. TEX. R. 9.1.

The district court makes this argument only in its reply brief and relies primarily upon inherent power to justify its standing order.  Moreover, we do not read the local rule to authorize, in every case, the sweeping order that is at issue here.  Nor can local rules be relied upon at the expense of other considerations of federal law.  See In re Dresser Indus., 972 F.2d 540, 543 (5th Cir. 1992).

[5] As we noted above, the Attorney General has power to develop regulations dealing with the settlement of lawsuits involving the federal government.  The government contends that the district court's order interferes with those regulations; it makes the bold assertion that a court may never compel the Department of Justice to alter its regulations governing its procedures for handling litigation.  We disagree.  If that were the case, the executive branch could use the courts as it pleased.  The executive branch is not above the law.  United States v. Nixon, 418 U.S. 683 (1974).  Moreover, the government misinterprets Touhy v. Ragen, 340 U.S. 462 (1951), the authority relied upon for this argument.

In Touhy, a low-level official of the Department of Justice, obeying an
(continued...)

11

As the Supreme Court recently has observed, the executive branch's "most important constitutional duty [is] to `take Care that the Laws be faithfully executed.'" Lujan v. Defenders of Wildlife, 112 S. Ct. 2130, 2145 (1992). The purpose of the structure established by the Attorney General is to promote centralized decisionmaking on important questions. The Supreme Court has recognized the value of such centralized decisionmaking in the executive branch. Touhy, 340 U.S. at 468.

Centralized decisionmaking promotes three important objectives. First, it allows the government to act consistently in important cases, a value more or less recognized by the Equal Protection Clause. Second, centralized decisionmaking allows the executive branch to pursue policy goals more effectively by placing ultimate authority in the hands of a few officials. See Heckler v. Chaney, 470 U.S. 821, 831 (1985) (litigants should not interfere with agency discretion, as that could impede with agency policy goals). Third, by giving authority to high-ranking officials,

---

⁵(...continued)
internal departmental regulation, refused to produce papers demanded by a subpoena. Given the potentially sensitive nature of Justice Department documents, the Court held that he properly could refuse to turn over the documents. At best, this case stands for the proposition that courts should observe reasonable regulations of the Executive Branch that have strong underlying policy justifications. The Court's opinion and Justice Frankfurter's concurrence explain that the Court did not decide whether a district court could force the Attorney General to turn over documents. 340 U.S. at 469-73. Our holding today allows us to avoid deciding whether forcing the Attorney General to alter the settlement regulations would run afoul of the doctrine of separation of powers.

The government also relies upon a portion of the Judicial Improvements Act of 1990, 28 U.S.C.A. § 473 (West Supp. 1992), which gives district courts the power to adopt local rules to require parties with full settlement authority to attend settlement conferences. This statute does not affect the issue before us, as the district judge did not act pursuant to a local rule passed pursuant to this statute; instead, he primarily asserts inherent powers. See supra note 4.

12

centralized decisionmaking better promotes political accountability.

Given the reasonable policy justifications for the Justice Department's settlement regulations and the insignificant interference with the operation of the courts, the district court abused its discretion in not respecting those regulations. Where the interference with the courts is slight, courts should not risk becoming "monitors of the wisdom and soundness of Executive action." Laird v. Tatum, 408 U.S. 1, 15 (1972). The order at issue here imposes a major inconvenience on at least one of the parties without the showing of a real and palpable need.

The district court contends that the government is not special and should not be treated differently from private litigants. The government is in a special category in a number of respects, however, in addition to its need for centralized decisionmaking. "It is not open to serious dispute that the Government is a party to a far greater number of cases on a nationwide basis that even the most litigious private entity . . . . " United States v. Mendoza, 464 U.S. 154, 159 (1984).

This court, as well, has recognized that the government sometimes must be treated differently. Obviously, high-ranking officials of cabinet agencies could never do their jobs if they could be subpoenaed for every case involving their agency. As a result, we have held that such subpoenas are appropriate only in egregious cases. See, e.g., In re Office of Inspector Gen., 933 F.2d 276, 278 (5th Cir. 1991); In re Equal Employment Opportunity

13

Comm'n, 709 F.2d 392, 398 (5th Cir. 1983).  "[T]he efficiency of the EEOC would suffer terribly if its commissioners were subject to depositions in every routine subpoena enforcement proceeding."  Id.

In determining whether to require the government (or, for that matter, a private party) to send a representative to a pretrial conference with full authority to settle, a district court should take a practical approach.  The court must be permitted to conduct its business in a reasonably efficient manner; it need not allow the parties or counsel to waste valuable judicial resources unnecessarily.  On the other hand, the court should recognize that parties have a host of problems beyond the immediate case that is set for pretrial conference.  This is particularly true of the government.  We have outlined above, in some detail, the peculiar position of the Attorney General and the special problems the Department of Justice faces in handling the government's ever-increasing volume of litigation.

We conclude that the district court abused its discretion in routinely requiring a representative of the government with ultimate settlement authority to be present at all pretrial or settlement conferences.  We do not suggest that the district court can never issue such an order, but it should consider less drastic steps before doing so.

For example, the court could require the government to declare whether the case can be settled within the authority of the local United States Attorney.  If so, the court could issue an order requiring the United States Attorney to either attend the

14

conference personally or be available by telephone to discuss settlement at the time of the conference.

According to the government at argument, most of its routine litigation can be settled within the United States Attorney's authority. Where that is not so, and failure of the government to extend settlement authority is a serious, persistent problem, substantially hampering the operations of the docket, the court could take additional action, such as requiring the government to advise it of the identity of the person or persons who hold such authority and directing those persons to consider settlement in advance of the conference and be fully prepared and available by telephone to discuss settlement at the time of the conference. Finally, if the district court's reasonable efforts to conduct an informed settlement discussion in a particular case are thwarted because the government official with settlement authority will not communicate with government counsel or the court in a timely manner, the court, as a last resort, can require the appropriate officials with full settlement authority to attend a pretrial conference.

The measures we outline above are intended to be exemplary, and we express no ultimate view as to such hypothetical situations except to point out that there are many steps that reasonably can be taken, far short of the standing order at issue here. We include these scenarios to demonstrate that the district court, before issuing an order such as the directive under review here, must give individualized attention to the hardship that order will

15

create.  The court must then exercise its discretion in light of the circumstances of that case.  We believe that such practical measures will enable the courts to administer their dockets efficiently while allowing the Department of Justice to handle effectively the burdensome volume of litigation thrust upon it.

IV.

In summary, we conclude that the district court abused its discretion in these cases.  We find it unnecessary to issue writs of mandamus, however.  The able district judge has indicated that he welcomes this court's exposition of this issue, and we are confident that he will abide by our decision and adjust his directives accordingly.  Thus, the petitions for writs of mandamus are DENIED without prejudice.