# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
                *Petitioner,*

    v.

UNITED STATES DISTRICT
COURT FOR THE NORTHERN MARIANA
ISLANDS,
                *Respondent,*

JOHN K. BALDWIN,
      *Real Party in Interest.*

No. 11-72940

D.C. No.
1:09-cv-00033-ARM

ORDER
AMENDING
OPINION AND
AMENDED
OPINION

Appeal from the United States District Court
for the Northern Mariana Islands
Ramona V. Manglona, Chief District Judge, Presiding

Argued and Submitted
June 21, 2012—Pasadena, California

Filed September 12, 2012
Amended October 16, 2012

Before: Mary M. Schroeder, Edward Leavy, and
Richard R. Clifton, Circuit Judges.

Opinion by Judge Clifton

12361

**COUNSEL**

Tamara W. Ashford, Deputy Assistant Attorney General, Gilbert S. Rothenberg (argued), Michael J. Haungs, and Ivan C.

Dale, Attorneys, Tax Division, Department of Justice, Washington, D.C., for the petitioner.

Deborah Deitsch-Perez (argued), Tory Cronin, Lackey Hershman, LLP, Dallas, Texas, attorneys for real party in interest John K. Baldwin.

---

## ORDER

This Court's opinion, filed September 12, 2012, is amended by deleting the following two sentences on page 11159: "For example, the Attorney General has the discretion to decide which attorney will appear as counsel to represent the government in court. But that does not mean that he has the authority to require the court to accept the appearance as counsel of someone who is not admitted to the bar."

The opinion is also amended by replacing the next sentence "Nor does the Attorney General's authority to conduct litigation permit him to tell the court when a hearing will be held or how to manage the proceedings." with "The Attorney General's authority to conduct litigation does not, for example, permit him to tell the court when a hearing will be held."

---

## OPINION

CLIFTON, Circuit Judge:

The government has filed a petition for a writ of mandamus, requesting that this court vacate four district court orders directing the government to be represented at an initial court settlement conference by a representative with full authority to settle a civil tax refund lawsuit. We hold that the district court has the authority to order parties, including the federal government, to participate in mandatory settlement confer-

ences, but that the exercise of such authority is subject to review for abuse of discretion. Based on the facts of this case, we conclude that the district court abused its discretion in ordering a government representative with full settlement authority to appear at an initial settlement conference. Accordingly, we grant mandamus relief and direct the district court to vacate the disputed orders.

## I. Background

The current dispute arises in the context of a multi-million dollar tax refund case pending in the District Court for the Northern Mariana Islands. Following disallowance by the Internal Revenue Service of certain deductions, real party in interest John K. Baldwin paid a federal income tax deficiency and then filed a lawsuit seeking to recover in excess of $5 million in taxes, penalties, and interest.

The district court has a local rule that provides that "[t]he court will routinely set a date for a settlement conference" in civil cases. D. N. Mar. I. Civ. R. 16.2CJ(e)(5). A subpart of that rule is explicit in mandating attendance at the conference by each party through a representative with "full authority" to settle the litigation: "Each party shall be required to attend the settlement conference, either personally or through a representative with full authority to participate in settlement negotiations and to effect a complete compromise of the case." D. N. Mar. I. Civ. R. 16.2CJ(e)(5)(a).[1]

The district court issued an order on September 2, 2011, scheduling a settlement conference in Coeur d'Alene, Idaho,

---

[1]Other districts within this circuit have adopted similar local rules requiring parties to be represented at court settlement conferences by a representative with full authority to settle a matter. *See, e.g.*, C.D. Cal. Civ. R. 16-15.5(b); E.D. Cal. Civ. R. 270(a), (f)(2); N.D. Cal. ADR R. 7-4; S.D. Cal. Civ. R. 16.1(c)(1); S.D. Cal. Civ. R. 16.3(b); D. Guam Civ. R. 16.6; D. Haw. Civ. R. 16.5(a), (b)(2); D. Nev. Civ. R. 16-6.

before Senior District Judge Alex Munson, serving as settlement judge.[2] This was to be the first settlement conference held by the court in this case.

Five days after the order was issued, the government moved for relief from the requirement to have a person with "full" settlement authority attend the settlement conference. The government stated that, because of the size of Baldwin's claim, the lowest-ranking official authorized to settle this case was the officer in charge of the Tax Division of the Department of Justice, the Assistant Attorney General of the Tax Division ("Assistant Attorney General"),[3] and her authority is limited by the requirement that the Congressional Joint Com-

---

[2]After serving as the district judge for the District Court of the Northern Mariana Islands since 1988, Judge Munson retired in 2010, but he consented to being recalled to serve temporarily as a judge whenever necessary for the proper dispatch of court business. *See* 48 U.S.C. § 1821(b)(2). This case is assigned to District Judge Ramona V. Manglona, and Judge Munson's role is limited to his service as a settlement judge. Judge Munson still has authority to enter orders. *See id.*

After retiring, Judge Munson moved from Saipan to Idaho. This is the likely reason that Coeur d'Alene was designated as the location for this settlement conference. The parties are principally represented by counsel based in Dallas and Washington, D.C. The location of the conference at a location outside the District of the Northern Mariana Islands is not in dispute.

[3]The position of Assistant Attorney General for the Tax Division was at that time vacant, so the authority to settle was delegated to the Principal Deputy Assistant Attorney General ("Principal Deputy"). *See* Principal Deputy Delegation, Department of Justice, Tax Division, Directive No. 142, http://www.justice.gov/tax/readingroom/2008ctm/CTM%20Chapter%203.htm#Directive No. 142 (last visited August 8, 2012). As a result, the government's motions in the district court and its initial papers in this court referred to the Principal Deputy as the lowest-ranking official authorized to settle this case. The appointment of Kathryn Keneally to serve as the Assistant Attorney General for the Tax Division was subsequently confirmed by the Senate and she assumed that position while this matter was pending in this court, so the Assistant Attorney General is again the lowest-ranking official with settlement authority. For simplicity, we will only refer to that position.

mittee on Taxation ("Joint Committee") reviews and has no adverse criticism to the proposed refund or settlement.[4] *See* 28 C.F.R. §§ 0.160-.0162; *see also* Rules and Regulations, 76 Fed. Reg. 15212-02 (Mar. 21, 2011). The government argued that the personal participation of the Assistant Attorney General should not be required and proposed instead that the settlement conference be personally attended by the trial attorneys with primary responsibility for the handling of the case, with the Section Chief of the Tax Division's Office of Review ("Section Chief") available for consultation by telephone during the settlement conference. The Section Chief is authorized to accept offers in compromise in cases against the United States in which the amount of the government's concession, exclusive of statutory interest, does not exceed $1.5 million. *See* Rules and Regulations, 76 Fed. Reg. 15212-02 (Mar. 21, 2011).

The district court denied the government's request for relief from the Local Rule in an order filed on September 9, 2011. The order, entered by Judge Munson, observed that the government "made some reasonable arguments in support of its position," but concluded that "in twenty-nine years of facilitating settlement negotiations, the undersigned has never brought about a settlement agreement without having present on each side a person with full authority to effect such an agreement. This is the determinative fact. As such, the Request is hereby DENIED."

---

[4]The Assistant Attorney General can only accept an offer in compromise in excess of $2 million if the Joint Committee indicates that it has no adverse criticism of the proposed settlement. *See* 26 U.S.C. § 6405(a) (no refund in excess of $2 million shall be made until after the expiration of 30 days from the date the report is submitted to the Joint Committee); *see also* 28 C.F.R. § 0.160(b). If the IRS opposes or the Joint Committee has an adverse criticism of the proposed settlement, then only the Associate Attorney General can authorize the settlement. *See* 28 C.F.R. §§ 0.160(b), (d), 0.161(b). The Assistant Attorney General may, in some circumstances, redelegate his or her settlement authority, provided that the amount of the concession, exclusive of interest, is less than $2 million. *See* 28 C.F.R. § 0.168(a).

The next day, the government filed an emergency motion for relief from the September 9, 2011 order, reiterating its proposed compromise to have the trial attorneys personally attend the settlement conference and to have the Section Chief available by telephone for consultation. The district court again denied this proposal, stating, in an order by Judge Munson filed on September 13, 2011, that a "person with authority to recommend any settlement reached by the parties to the Congressional Joint Committee on Taxation must be present at the settlement conference."

The government filed another emergency request for relief the next day, this time directing its motion at Judge Manglona, as the trial judge for this action.[5] The government also sought clarification of the district court's September 13, 2011 order directing a "person with authority to recommend any settlement reached by the parties to the Congressional Joint Committee on Taxation" attend the settlement conference, because, pursuant to regulations, the trial attorneys could "recommend" any settlement but, because the settlement may involve amounts in excess of $2 million, settlement of the case could require approval of the Assistant Attorney General.

That same day, September 14, 2011, Judge Manglona issued an order denying the government's motion. The order stated that the government did not need an order issued by her, as the trial judge, in order to submit a petition for a writ of mandamus to this court.[6] Judge Manglona also declined to interpret the supposedly ambiguous phrase in the September 13, 2011 order issued by Judge Munson.

---

[5]It appears that the government directed its September 14, 2011 motion to Judge Manglona because Federal Rule of Appellate Procedure 21, concerning writs of mandamus and other extraordinary writs, references the "trial court" and the "trial-court judge."

[6]No party has argued to the contrary or raised any such objection to our consideration of the current petition.

On October 3, 2011, the government filed in this court an emergency petition for a writ of mandamus and an emergency motion to stay the settlement conference, then scheduled for October 17, 2011. Before this court could act, the government filed the next day in the district court an emergency motion to stay the provision of the Local Rule and the district court's three September 2011 orders. In response to the government's motion to stay, the district court took the settlement conference off calendar and ordered additional briefing on the motion.

The district court entered an order that denied the government's motion to stay and reset the settlement conference for February 29, 2012. The order, issued by Judge Munson on January 6, 2012, stated that, for the government, "attendance by a person with authority to recommend any settlement reached by the parties to the Congressional Joint Committee on Taxation shall be deemed to comply with this order."[7] The district court rejected the government's suggestion that it would be sufficient if an official with the requisite authority would be available by telephone because "[i]f the claim is large enough to require the official's signoff, it is large enough to require the official's presence at the settlement conference." The district court stated that it would entertain suggestions of other dates and venues other than Coeur d'Alene, Idaho in order to accommodate the parties.[8]

[7]Although the language used in the January 6, 2012 order was essentially the same as the language in the September 13, 2011 order, which the government described as "ambiguous" in the motion presented to Judge Manglona on September 14, 2011, no party has taken the position before us that the district court order would be satisfied by the appearance of government trial attorneys who could "recommend" a settlement, if approval by someone higher up would be required for the proposed settlement to be sent to the Joint Committee. It is plain that the district court wanted to see someone on behalf of the government who could approve a proposed settlement up to the point of presenting it to the Joint Committee.

[8]The January 6, 2012 district court order was issued after the government filed its petition with this court, so it is not mentioned in the October 3, 2011 filing. The parties agree that the January 6, 2012 order is the currently operative order in this case and that the government's petition should be understood to cover that order, as well.

After the entry of the January 6, 2012 district court order and our subsequent receipt of a response to the petition from Baldwin and a reply from the government, we stayed the settlement conference scheduled for February 29, 2012 "without prejudice to the district court ordering a new settlement conference without the requirement that the parties have a representative with full settlement authority attend the conference or for petitioner United States of America, at least a person 'with authority to recommend any settlement reached by the parties to the Congressional Joint Committee on Taxation.' " We also set the matter for oral argument, at which time we were advised that no settlement conference has been conducted and that the tax refund case remains pending in district court.

## II.   Discussion

### A.   Mandamus Relief

We determine whether a writ of mandamus should be granted on a case-by-case basis, weighing five factors outlined in *Bauman v. United States District Court*, 557 F.2d 650, 654-55 (9th Cir. 1977). *See Cole v. U.S. Dist. Court*, 366 F.3d 813, 816-17 (9th Cir. 2004). The five guidelines identified in *Bauman* to determine whether mandamus is appropriate are: (1) whether the petitioner has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way not correctable on appeal; (3) whether the district court's order is clearly erroneous as a matter of law; (4) whether the district court's order is an oft-repeated error or manifests a persistent disregard of the federal rules; and (5) whether the district court's order raises new and important problems or issues of first impression. *See Bauman*, 557 F.2d at 654-55.

In opposing mandamus relief, Baldwin does not appear to dispute that the government does not have another means to obtain review of or relief from the orders at issue except

through mandamus, so the first two factors are satisfied. Though it is not clear how often this problem is actually presented in other cases, the element raised by the fourth factor, we recognize that there are many cases across the country involving substantial financial claims against the federal government, including many substantial claims for tax refunds (as will be noted in more detail below). Because many federal district courts have local rules requiring settlement conferences to be attended by representatives with settlement authority, we conclude that the potential problem presented to us here is significant enough to justify review on mandamus. The fifth factor appears to be satisfied as well, as it does not appear that our court has previously addressed the questions presented by the government's petition.

**[1]** The remaining factor, whether the district court's order is clearly erroneous as a matter of law, is the only factor seriously disputed here. We have held that a district court's ruling is "clearly erroneous" under the third *Bauman* factor when we have " 'a definite and firm conviction that a mistake has been committed.' " *Cohen v. U.S. Dist. Court*, 586 F.3d 703, 708 (9th Cir. 2009) (quoting *Concrete Pipe & Prods. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 623 (1993)). We recognize that to be a standard that affords significant deference to the district court's decision. Nonetheless, after reviewing the circumstances and the arguments, we have been left with a definite and firm conviction that a mistake was committed here and that the district court's order represented an abuse of discretion. We thus grant the requested mandamus relief.

## B. The Contentions in the Petition

The government's petition presents two questions, which it identifies as follows: (1) whether the district court has the authority to direct that the United States, its agencies, or its officers sued in their official capacities must appear at routine settlement conferences through a high-level official who has full settlement authority over the claim in dispute; and (2)

whether, if such authority exists, it has been abused under the circumstances of this case. As explained below, we conclude that the district court had the authority to require a high-level official to participate in a settlement conference in appropriate circumstances, but in the circumstances of this case, the order entered by the court constituted an abuse of discretion.

## C.   The District Court's Authority

**[2]** We conclude that the district court has broad authority to compel participation in mandatory settlement conference. Such authority arises from at least three different sources.

**[3]** First, Rule 16(c)(1) of the Federal Rules of Civil Procedure provides that "[i]f appropriate, the court may require that a party or its representative be present or reasonably available by other means to consider possible settlement."[9]

**[4]** Second, the Civil Justice Reform Act of 1990 authorizes a district court to provide for mandatory settlement conferences as part of a civil justice and delay reduction plan. The statute lists litigation management techniques which the court should consider and may implement, including "a requirement that, upon notice by the court, representatives of the parties with authority to bind them in settlement discussions be present or available by telephone during any settlement conference." 28 U.S.C. § 473(b)(5). That authority does not exclude cases involving the federal government, though Congress was certainly aware that the government is, by a wide margin, the most frequent litigant in federal court. *See United States v. Mendoza*, 464 U.S. 154, 159 (1984) ("It is not open to serious dispute that the government is a party to a far

---

[9]*See also* Fed. R. Civ. P. 16 Advisory Committee Note, 1993 Amendments ("The explicit authorization in the rule to require personal participation in the manner stated is not intended to limit the reasonable exercise of the court's inherent powers or its power to require party participation under the Civil Justice Reform Act of 1990.") (citations omitted).

greater number of cases on a nationwide basis that even the most litigious private entity . . . .").

**[5]** Third, the district court has inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also In re Stone*, 986 F.2d 898, 903 (5th Cir. 1993) ("subject to the abuse-of-discretion standard, district courts have the general inherent power to require a party to have a representative with full settlement authority present- or at least reasonably and promptly accessible- at pretrial conferences"); *In re Novak*, 932 F.2d 1397, 1405, 1407 (11th Cir. 1991); *G. Heileman Brewing Co., Inc. v. Joseph Oat Corp.*, 871 F.2d 648, 653 (7th Cir. 1989) (en banc).[10]

**[6]** We are not persuaded by the government's argument that the district court lacked authority to issue its orders because it would interfere with the exclusive authority assigned to the Attorney General by Congress to conduct litigation on behalf of the federal government. *See, e.g.*, 28

---

[10]We note that the District Court for the Northern Mariana Islands is not a court created under Article III of the Constitution but is rather an Article IV territorial court. *See Nguyen v. United States*, 539 U.S. 69, 72-73 (2003). The government, while noting its awareness of the distinction, has not argued that this district court has less inherent power to manage its docket, including authority to order settlement conferences, than other district courts. We similarly see no reason why the authority of the District Court for the Northern Mariana Islands has, in this regard, any less authority than Article III district courts. The statute that created the court specifically provides, as a general proposition, that "the provisions of part II of Title 18 and of Titles [sic] 28, the rules of practice and procedure heretofore or hereafter promulgated and made effective by the Congress or the Supreme Court of the United States pursuant to Titles 11, 18, and 28 shall apply to the District Court for the Northern Mariana Islands and appeals therefrom." 48 U.S.C. § 1821(c); *see also Fleming v. United States*, 279 F. 613 (9th Cir. 1922) (holding that non-Article III territorial courts possess at least the "inherent power" to compel obedience to its orders by the power of contempt).

U.S.C. §§ 510, 516-17, 519; 26 U.S.C. § 7122(a). As noted above, Congress did not exempt the government, as a litigant, when it authorized federal courts to order settlement conferences. The Attorney General's authority to manage the federal government's litigation is not infringed by the court's management of its caseload or calendar. The Attorney General's authority to conduct litigation does not, for example, permit him to tell the court when a hearing will be held. The delegation to the Attorney General of authority to conduct litigation concerns the allocation of responsibility, within the government, for representing the United States as a party. The orders in dispute do not interfere with the Attorney General's authority to determine who will appear as counsel for the United States. They concern the appearance of an appropriate representative of a party at a settlement conference, a person who might not be an attorney at all. When the United States stands as a party before the court, the authority of the Attorney General is no greater than that of any other party. The Attorney General is not independent of the court's authority, including its authority over a settlement conference. *See In re Stone*, 986 F.2d at 903 n.5 ("[The government] makes the bold assertion that a court may never compel the Department of Justice to alter its regulations governing its procedures for handling litigation. We disagree. If that were the case, the executive branch could use the courts as it pleased. The executive branch is not above the law.").

## D.   Abuse of Discretion

The authority of the district court is not limitless, however. It is subject to review for abuse of discretion. *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980) ("Because inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion."); *In re Stone*, 986 F.2d at 903 n.3 (citing cases and stating that "such inherent power, through broad, is subject to the abuse-of-discretion standard"); *Heileman*, 871 F.2d at 653 (same); *In re United States*, 149 F.3d 332, 333 (5th Cir. 1998) (same).

We conclude that, in the circumstances of this case, the district court did abuse its discretion in ordering a government representative with full settlement authority to appear at the first settlement conference to be held with the court.

The most important reason for our conclusion is that the federal government, though not independent of the court's authority, is also not like any other litigant. *See, e.g.*, *Mendoza*, 464 U.S. at 159 (noting that the " 'Government is not in a position identical to that of a private litigant' " (quoting *INS v. Hibi*, 414 U.S. 5, 8 (1973))). The Department of Justice in general and its Tax Division in particular are responsible for a very large number of cases. The government reported to us that, as of January 9, 2012, the Tax Division had 549 civil cases pending in which the amount in controversy exceeded $2 million (exclusive of interest), the current case being just one of them. It further reported that the Tax Division receives a new civil case involving more than $2 million, on average, every third business day. The Assistant Attorney General is the lowest-ranking government official with authority to settle those claims under the Department's regulations. For her to prepare for and appear at all settlement conferences for all of those cases would be highly impractical, if not physically impossible.

**[7]** Yet the government has good reasons for not delegating greater authority to settle to more government attorneys or officials. As the Fifth Circuit noted in *In re Stone*:

> The purpose of the structure established by the Attorney General is to promote centralized decisionmaking on important questions. The Supreme Court has recognized the value of such centralized decisionmaking in the executive branch. [*United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 468 (1951).]
>
> Centralized decisionmaking promotes three important objectives. First, it allows the government

> to act consistently in important cases, a value more
> or less recognized by the Equal Protection Clause.
> Second, centralized decisionmaking allows the exec-
> utive branch to pursue policy goals more effectively
> by placing ultimate authority in the hands of a few
> officials. *See Heckler v. Chaney,* 470 U.S. 821, 831
> (1985) (litigants should not interfere with agency
> discretion, as that could impede with agency policy
> goals). Third, by giving authority to high-ranking
> officials, centralized decisionmaking better promotes
> political accountability.

986 F.2d at 904. The congressional oversight mandated by
statute through reports to the Joint Committee further illus-
trates the importance of centralizing the authority to settle
substantial matters on behalf of the federal government.

The Advisory Committee Notes issued in connection with
the 1993 amendments to Rule 16 of the Federal Rules of Civil
Procedure, including the addition of express authority to com-
pel participation in a settlement conference, noted above,
reflect concern for the treatment of governmental and institu-
tional parties:

> Particularly in litigation in which governmental
> agencies or large amounts of money are involved,
> there may be no one with on-the-spot settlement
> authority, and the most that should be expected is
> access to a person who would have a major role in
> submitting a recommendation to the body or board
> with ultimate decision-making responsibility.

The advisory committee's observation should not be read to
limit the court's authority to require meaningful participation
by a party in a settlement conference, but it suggests that the
court's authority should be exercised with awareness of the
institutional posture of the particular parties involved. That is

true, perhaps most of all, when the party is the federal government.

That the settlement conference that is the subject of the challenged orders is the first settlement conference to be held by the court in this case is another important factor behind our conclusion. There may be a time in the course of settlement negotiations when a settlement judge may determine that the personal participation of the person able to make a final decision is vital, but this case does not appear to reflect any such assessment, at least not based on anything particular regarding this case and the parties involved. This settlement conference was called as a matter of routine practice under the district court's local rules. As it was the first conference to be held in the case, the court did not have a basis to conclude that the direct involvement of the critical decisionmaker for the federal government was needed to achieve a settlement.

We do not say that the first settlement conference in a case is unimportant and that parties should be free to take it lightly. Especially in these circumstances, where the parties and attorneys are far-flung and substantial travel will be required by many people to attend the conference, it should be taken very seriously. The court may impress that message on the parties. But the court should take the parties' circumstances into consideration as well.

The premise underlying the district court's orders, or the "determinative fact," in the words of the September 9, 2011 order, was the observation by Judge Munson that he had, in twenty-nine years of judicial experience, "never brought about a settlement agreement without having present on each side a person with full authority to effect such an agreement." While we have great regard for Judge Munson, that has not been the experience of the members of this panel. Nor does that appear to be the history of the Tax Division. The government reports that the Tax Division has settled thousands of cases without high-ranking officers personally attending set-

tlement conferences, and we have no reason to doubt that representation. If the government's track record were to the contrary, federal courts all over the country would be well aware of that fact and would likely have commented loudly on it. We have not heard such comments, and we have not seen a disproportionate number of cases involving the Tax Division on our own calendar.

[8] We agree with the Fifth Circuit that district courts should take a "practical approach" in determining whether to require the government to send a representative with full settlement authority to a pretrial conference and should consider less drastic steps before doing so. *In re Stone*, 986 F.2d at 904-05.[11] The district court should, for example, consider whether a representative may be effectively available as needed during a settlement conference without physical attendance. The relevant provision in the Civil Justice Reform Act of 1990, 28 U.S.C. § 473(b)(5), refers expressly to a representative being "available by telephone," and Rule 16(c)(1) speaks of a representative being "reasonably available by other means." Participation in a settlement conference by telephone or teleconference may be a practical alternative.

---

[11]For example, the District Court for the District of Alaska delineated the "less drastic steps" that it considered in one recent case prior to requiring a government representative with full settlement authority to be present, including:

> (1) conducting early settlement discussions to determine what the parties needed in order to be in a position to fully evaluate the case; (2) modifying the pretrial motion schedule to give the parties sufficient time to resolve the substantive motions before the scheduled conference; (3) requiring the United States Defendants to identify the person or persons who hold such authority and directing those persons to consider settlement in advance of the conference; and (4) arranging for the settlement conference to occur after the District Court ruled on the motions, with sufficient time (almost one month) for the United States Defendants to obtain settlement authority before the scheduled conference.

*Dietzmann v. United States*, No. 3:09-CV-0019-RJB, 2010 WL 5067901, at *4 (D. Alaska Dec. 3, 2010).

If it turns out that the district court's "reasonable efforts" to conduct settlement efforts are "thwarted because the government official with settlement authority will not communicate with the government counsel or the court in a timely manner," then we also agree with the Fifth Circuit that "the court, as a last resort, can require the appropriate officials with full settlement authority to attend a pretrial conference." *In re Stone*, 986 F.2d at 905. But that should not be the first step.

## III. Conclusion

**[9]** We acknowledge the district court's intention to create a conducive environment for settlement discussions but, at this stage of this case, where there has been no record of dilatory or evasive tactics by either party, the district court's orders were not justified. We conclude that, based on the facts of this case, the district court abused its discretion in ordering a government representative with full settlement authority to appear in person for an initial settlement conference. We grant the writ of mandamus and direct the district court to vacate the September 9, 2011, September 13, 2011, September 14, 2011, and January 6, 2012 orders.

**PETITION FOR WRIT OF MANDAMUS GRANTED**.