RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 19a0212p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

IN RE: UNIVERSITY OF MICHIGAN, et al.

*Petitioners.*

_____

JOHN DOE,

*Plaintiff-Respondent,*

      *v.*

UNIVERSITY OF MICHIGAN; UNIVERSITY OF MICHIGAN
BOARD OF REGENTS,

*Defendants-Petitioners.*

No. 19-1636

On Petition for a Writ of Mandamus.
United States District Court for the Eastern District of Michigan at Detroit;
No. 2:18-cv-11776—Arthur J. Tarnow, District Judge.

Decided and Filed: August 23, 2019

Before: ROGERS, KETHLEDGE, and THAPAR, Circuit Judges.
_____

**COUNSEL**

**ON PETITION FOR A WRIT OF MANDAMUS AND REPLY:** Stephen J. Cowen, Erin L.
Ramamurthy, Andrew J. Clopton, JONES DAY, Detroit, Michigan, for Petitioners.
**ON RESPONSE:** Deborah L. Gordon, Elizabeth Marzotto Taylor, DEBORAH GORDON
LAW, Bloomfield Hills, Michigan, for Respondents.

      THAPAR, J., delivered the opinion of the court in which KETHLEDGE, J., joined.
ROGERS, J. (pg. 11), delivered a separate opinion concurring in the result.

---

**OPINION**

---

THAPAR, Circuit Judge.    This case is about power.   The power of district courts to manage their cases and our power to review that process.   Questions about judicial power are far from new.   At the founding, the Anti-Federalists feared that unchecked judges would become tyrants in robes.   They warned that judges, "independent of the people, of the legislature, and of every power under heaven," would "soon feel themselves independent of heaven itself."   Brutus XV, in 2 *The Complete Anti-Federalist* 438 (Herbert J. Storing ed. 1981).   In response, the Federalists promised that judges would not usurp power because they can exercise neither "force nor will" but merely "judgment."   The Federalist No. 78, at 465 (Alexander Hamilton) (J. Cooke ed., 1961).   That is the original promise of the judicial branch.

But courts have not always lived up to that promise.   At times, they exercise force or will beyond the mere judgment that our founding principles permit.   Those principles lay down a clear rule:   federal courts may only act if they have power to do so.   And they only have power if Congress or the Constitution so provides.   When courts act beyond that power, as the district judge did here, they abuse their discretion.   We grant the University of Michigan's petition for mandamus.

I.

John Doe sued the University of Michigan for violating his due-process rights during a school disciplinary hearing.   This court remanded Doe's case in light of a related ruling requiring live hearings and cross-examination in such proceedings.   *See Doe v. Baum*, 903 F.3d 575, 578 (6th Cir. 2018).   Upon remand, the district judge took two actions that led to this mandamus petition.

First, the district judge—frustrated with the University's apparent foot-dragging—scheduled a settlement conference and required the University's president to attend.   The University requested that the president be allowed to attend by telephone or send a delegate in his place, but the district judge refused.   Next, the University requested permission to send

someone with both more knowledge about the sexual assault policy at issue and full settlement authority. While the district judge "100 percent" believed that such a person existed, he again refused. Pet. Exhibit A at 10. Instead, the district judge said he wanted the president to be there even if someone else with full settlement authority attended, and "even if the parties [we]re able to resolve the cross-examination issue as applied to Mr. Doe." Pet. Exhibit D at 3. The district judge made himself clear: "I want the President here. He will be here." Pet. Exhibit A at 10. The University planned for the president to attend.

But showing up was only half the battle. Two days before the settlement conference, the district judge decided that the conference (which he had assured the University would be private) should be a public event. The district judge reversed course because the case involved "matters of public interest." R. 54, Pg. ID 1805; Pet. Exhibit A at 10.

The surrounding media attention also grabbed the district judge's interest. "[H]olding a settlement conference is the Court's attempt to protect all parties . . . from unnecessary publicity[.]" Response at 5. While the district judge acknowledged that "the press covered the story . . . fully, and, for the most part, accurately," he worried that "the resulting publicity has neither helped the University's image nor contributed to the resolution of this case." *Id.* at 6. The "change of heart" was also "prompted, at least in part, by the University's public filing of a Motion to Dismiss . . . . The filing incited confusion amongst the media, . . . ultimately causing the University to issue a statement clarifying its position on the matter." *Id.* at 7.

To sum up, the district judge summoned a specific high-ranking state official to attend a settlement conference in person, and then turned that private settlement conference into a public event because "the case concern[ed] matters of public interest" and sparked media attention. R. 54 at 1805. The University now seeks a writ of mandamus to remedy these actions.

## II.

Federal courts are entrusted with great power. So where does that power come from? The answer is simple: from Congress and from the Constitution. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

The Constitution did not create lower federal courts. Rather, it vested the federal "judicial power" in the Supreme Court and in "such inferior courts as the Congress may from time to time ordain and establish." U.S. Const. art. III, § 1, cl. 1. Congress established the lower courts and gave us certain powers. But it can also set limits on those powers, subject to constitutional constraints. *See Patchak v. Zinke*, 138 S. Ct. 897, 906 (2018). Thus, courts must look to Congress for delegations of power and may not expand those delegations "by judicial decree." *Kokkonen*, 511 U.S. at 377.

To be sure, not all of our powers are spelled out in the text of a federal statute. The Supreme Court has also recognized that the "judicial power" grants lower federal courts some "inherent power" to "manage their own affairs." *Link v. Wabash Ry. Co.*, 370 U.S. 626, 630 (1962). These powers are not broad or ill-defined. Rather, they often have an ancient pedigree—even predating the federal rules. *See, e.g.*, *id.* at 629–30 ("The authority . . . to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot seriously be doubted . . . . The power is of ancient origin, having its roots in judgments of nonsuit and non prosequitur entered at common law[.]" (citing 3 William Blackstone, *Commentaries on the Laws of England* *295–96)). And inherent powers must be *necessary* for courts "to perform their functions." *Kokkonen*, 511 U.S. at 380. Indeed, they must be "incidental to all Courts." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991).

Any power a lower federal court exercises must have some basis in either an act of Congress or the Constitution. Otherwise, it has no basis in law. Here, the district judge sought to do two things: (1) require the University president to attend the settlement conference and (2) make that settlement conference open to the public and the media. Neither had a basis in law. Thus, the district judge abused his discretion.

III.

A. Congress

Congress has given district courts great control over their dockets. After all, the modern federal district judge faces a challenge—she must balance administering just and lawful outcomes with the need to move cases along. That means she must be both a fair and impartial

adjudicator and a conscientious and capable manager.  The district judge's job is not an easy one.  But the Federal Rules of Civil Procedure provide tools to manage a busy docket, including the valuable tool of encouraging parties to settle when appropriate.  *See* Fed. R. Civ. P. 16.

Timely and effective case management is even more difficult when you have a recalcitrant party.  Here, the district judge was frustrated with the University because he believed the University was not acting in good faith and potentially not complying with *Doe v. Baum*. 903 F.3d 575.  The district judge also expressed surprise that the University could not name a specific individual with full settlement authority besides the president.

Yet the district judge had a lawful avenue for dealing with bad faith settlement practices, if he thought the University's actions reached that level.  The Federal Rules allowed the district judge to sanction the University if it "fail[ed] to appear at a . . . pretrial conference" or "d[id] not participate [in a pretrial conference] in good faith."  Fed. R. Civ. P. 16(f)(1).  But the rules did not allow the district judge to order a forced public settlement conference where the University's principal executive is held to account.

*Requiring a specific high-ranking government official to attend a settlement conference.* Rule 16 provides that a "court may require that a party or its representative be present or reasonably available by other means to consider possible settlement."  Fed. Civ. P. 16(c)(1). And the Federal Rules generally allow a district court to order someone with settlement authority to attend a settlement conference.  *See In re LaMarre*, 494 F.2d 753, 756 (6th Cir. 1974).  But this power is more limited when it comes to government actors.  The Advisory Committee Notes explain that in cases involving government officials, it may be that *nobody* with settlement authority can attend, to say nothing of the highest-ranking official with such authority.  There, "the most that should be expected is access to a person who would have a major role in submitting a recommendation to the body or board with ultimate decision-making responsibility."  Fed. R. Civ. P. 16 Advisory Committee Notes (1993 Amendments); *see also In re NLO, Inc.*, 5 F.3d 154, 157 (6th Cir. 1993) ("The Supreme Court has established that 'in ascertaining [the] meaning [of the Rules] the construction given to them by the Committee is of weight.'" (quoting *Miss. Pub. Corp. v. Murphree*, 326 U.S. 438, 444 (1946))).

Here, the University, a state actor, went further than the rules require—it offered the district judge a representative with full settlement authority. The district judge refused. He insisted that the president attend the conference because the president had a duty to explain University policy to his consituents. That is not a valid reason. Similarly, the district judge's understandable desire to settle the case is not compelling here, because the University offered to send someone with *full settlement authority*. Thus, the district judge abused his discretion when he ordered a specific high-ranking state official to serve as a party's representative. Indeed, other circuits have found an abuse of discretion for far less. *See United States v. U.S. Dist. Court for N. Mariana Islands*, 694 F.3d 1051, 1059, 1062 (9th Cir. 2012) (granting mandamus when a district judge ordered that a government representative with full settlement authority attend a settlement conference); *In re Stone*, 986 F.2d 898, 905 (5th Cir. 1993) (holding that the district court abused its discretion when it issued a standing order that the federal government send *any* person with settlement authority to every private settlement conference).

*Requiring a settlement conference to be public.* The Federal Rules provide five enumerated purposes of pretrial conferences. *See* Fed. R. Civ. P. 16(a). The district judge's stated purpose, discussing "matters of public interest," is not one of them. R. 54, Pg. ID 1805. Further, the Rules name sixteen matters for consideration at pretrial conferences—things like "disposing of pending motions," "amending the pleadings if necessary or desirable," and "facilitating in other ways the just, speedy, and inexpensive disposition of the action." Fed. R. Civ. P. 16(c)(2)(B), (K), (P). This is a far cry from requiring a high-ranking state official to "explain [policy choices] to the media, to the public, and perhaps most importantly to the faculty and the students." Pet. Exhibit A at 10.

In fact, to achieve the purposes that the Rules *do* permit, settlement conferences should be private, not open to the media and the public. A judge may order a pretrial conference to *facilitate settlement*. Fed. R. Civ. P. 16(a)(5). And for a settlement conference to work, "parties must feel uninhibited in their communications." *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 980 (6th Cir. 2003). They must be free to make candid assessments, admit their strengths and weaknesses, offer concessions, and put on hold the performative aspects of trial. For this reason, "confidential settlement communications are a tradition in this

country" and "[t]his Court has always recognized the need for . . . secrecy in settlement proceedings." *Id.*

Given the important interest in private settlement negotiations, the district judge abused his discretion by ordering that the private conference become an open and documented discussion of "matters of public interest" two days before the conference was to take place. R. 54, Pg. ID 1805.

## B. The Constitution

Congress did not grant the district judge the power to require a specific high-ranking state official to attend a public settlement conference. Neither does the Constitution. As the Supreme Court has told us, to fall under the category of "inherent powers" vested in Article III courts, a power must be necessary to the court's function. And because such powers are incidental to all courts, they often have ancient roots. *Kokkonen*, 511 U.S. at 378; *Chambers*, 501 U.S. at 43. Of course, it may be that the "judicial power," as originally understood, authorizes action beyond the doctrine of "inherent powers." But the parties have not pointed us to any other power that would authorize the district judge's order in this case.

The district judge's asserted power to require a specific person—regardless of the availability of other representatives—to attend a public settlement conference does not meet the high bar of "inherent powers." It is not "necessary" for courts to perform their functions or "incidental to all courts." *Chambers*, 501 U.S. at 43. And neither the parties nor the district judge have shown that this power has ancient roots. No surprise, since settlement conferences only date back to "early 20th century efforts by municipal courts to apply Scandinavian conciliation techniques to local cases." *B.H. v. McDonald*, 49 F.3d 294, 300 (7th Cir. 1995). Courts have long been empowered to decide cases or controversies, not to hold press conferences on "matters of public interest." R. 54, Pg. ID 1805. Further, federalism and separation-of-powers principles counsel strongly against recognizing such a power.

*Federalism.* The University president is a high-ranking state official. *See* Mich. Const. art. 8, § 5 (describing the president of the University of Michigan as a "principal executive officer"). So the district judge's plan was to require a high-ranking state official to "explain" a

state policy "to the media, to the public, and perhaps most importantly to the faculty and the students" in a federal court. Pet. Exhibit A at 10. Invoking federal power to haul a high-ranking state official into federal court for the express purpose of requiring that he explain something to his constituents is an "obvious irritant" "against [a] state official[.]" *Allegheny Cty. v. Frank Mashuda Co.*, 360 U.S. 185, 190 (1959). Thus, this order threatens the "delicate balance in the area of federal-state relationships." *Id.* at 187.

*Separation of Powers.* The district judge's order would also set a dangerous precedent for the judiciary's place in our system of separated powers. Imagine if federal judges were free to conduct firing-line-style interviews of high-ranking government officials under the guise of public settlement conferences. Far-fetched? Unfortunately, no. In the 1980s, a district judge "ordered [the] Acting Secretary of Labor . . . to appear before him for settlement discussions on the very day [the Secretary] was scheduled to appear before the Senate for his confirmation hearing." *G. Heileman Brewing Co. v. Joseph Oat Corp.*, 871 F.2d 648, 657 (7th Cir. 1989) (Posner, J., dissenting); *see also id.* at 661 (noting that the district judge added: "I want to see him . . . in this courtroom to tell me why the Secretary of Labor is taking these idiotic positions").

Neither Congress nor the Constitution granted the district judge the power to order a specific high-ranking state official to attend a public settlement conference, and he abused his discretion by doing so.

IV.

Finally, we turn to our own power to remedy the district judge's conduct. Our power to grant mandamus comes from Congress. Today, that power is codified in the All Writs Act, which has roots in the Judiciary Act of 1789. *See* 28 U.S.C. § 1651; *see also United States v. Morgan*, 346 U.S. 502, 506 (1954). And the writ itself traces back to at least the thirteenth century. *See Ex parte Crane*, 30 U.S. (1 Pet.) 190, 192 (1831). By the time of Blackstone, it was well-settled that a court could issue a writ of mandamus "to the judges of any inferior court" to "restrain[] their excesses." 3 William Blackstone, *Commentaries on the Laws of England* *110–11.

Without question, mandamus is an extraordinary remedy. *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380 (2004). For the writ to issue, the University must (1) have no other adequate means of obtaining relief, (2) demonstrate a right to issuance that is clear and indisputable, and (3) show that issuance of the writ is appropriate under the circumstances. *Id.* at 380–81. Mandamus is appropriate to remedy a clear abuse of discretion or judicial usurpation of power. *Id.* at 380. Courts have discretion to exercise power within the bounds of their law-given authority. But the powers granted by Congress and the Constitution do not always govern every situation. Rather, they set broad rules that define and thus limit a court's authority. And when courts exercise a power beyond that authority, they abuse their discretion. In those cases, mandamus may be appropriate. Mandamus is also appropriate to prevent "intrusion by the federal judiciary on a delicate area of federal-state relations," and to correct a district judge who "disregard[s] . . . the Rules of Civil Procedure." *Will v. United States*, 389 U.S. 90, 95–96 (1967). The extraordinary remedy is warranted here.

The district judge took two actions that together warrant mandamus. He summoned a specific high-ranking state official to attend a settlement conference *and* required, at the eleventh hour, that the settlement conference be open to the public and the media. Either of these actions alone *may* warrant mandamus. Together, they certainly do.

First, the University has no other means of obtaining relief. "[A] mandamus lies, if there be no other *adequate, specific, legal* remedy." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 152 (1803). No "controlling question of law" that would "materially advance the ultimate termination of the litigation" could have given rise to a discretionary interlocutory appeal under 28 U.S.C. § 1292(b). So the University had no other legal recourse. Second, the need for mandamus is indisputable. The district judge clearly abused his discretion at the expense of important federalism principles. Third, mandamus is appropriate because the district judge's actions present a clear case of judicial overstep. We have the power and duty to issue it here.

\*\*\*

The limits of the federal judicial power have been debated for centuries and will keep judges and scholars busy for centuries more. But when it comes to the daily operations of the district court, the answer *in practice* is straightforward. A court can only act if it has power. And a court only has power if an act of Congress or the Constitution grants it. Only then will we uphold the original promise of the judicial branch to exercise "neither force nor will but merely judgment." The Federalist No. 78, at 465 (Alexander Hamilton). We grant the petition for mandamus.

---

## CONCURRING IN THE RESULT

---

ROGERS, Circuit Judge, concurring in the result. I concur, but would state my reasoning somewhat differently. In a sense, a court does not have the "power" to act in a way that abuses its discretion. Ordering the presence of the university president at an on-the-record settlement conference—for reasons not clearly related to obtaining a settlement—amounts to an abuse of discretion, as we hold. Such an order was thus in a way of speaking beyond the court's power. But this is not to say, and I do not read our decision today to hold, that ordering the presence of a specific officer of a defendant to attend a settlement conference is categorically beyond the inherent power of a federal district court. The federal rules appear to assume such an inherent power,[1] and the Seventh Circuit, sitting en banc, has upheld such authority with respect to a corporate representative. *See G. Heileman Brewing Co., Inc. v. Joseph Oat Corp.*, 871 F.2d 648, 652–53 (7th Cir. 1989) (en banc). We need not address the broader power issue in this case, however, because this particular abuse of discretion in any event warrants mandamus relief.

Further, while the majority correctly relies on federalism concerns in this case involving a state entity, federal separation-of-powers concerns in contrast are not implicated here, where no federal official is involved.

---

[1]*See* Fed. R. Civ. P. 16(c)(1) ("If appropriate, the court may require that a party or its representative be present or reasonably available by other means to consider a possible settlement."). The Advisory Committee Notes for the 1993 Amendments to Rule 16 explain that "selection of the appropriate representative should *ordinarily* be left to the party and its counsel," (emphasis added), thus implicitly leaving open the possibility of extraordinary circumstances. Those notes also state that "authorization in [Rule 16] to require personal participation in the manner stated is not intended to limit the reasonable exercise of the court's inherent powers," citing *G. Heileman Brewing Co.*, *infra*.